Clark *v.* Brown.

---

## CLARK *vs.* BROWN.

Whether *fence viewers* are authorized to appraise damages sustained by the neglect or refusal of a party to make or maintain his proportion of a *division fence* for other than *ordinary injuries resulting from defective fences,* such as the treading down and destruction of grass, corn, wheat, and other crops, the extent of which can be ascertained upon *view* or by *inspection :* or whether the fence viewers have the right to appraise damages where the injury sustained is the death of cattle, caused by eating unripe corn in the fields of a party who has neglected to keep his proportion of a division fence in repair, *quere.*

The supreme court held in this case, that the power of *fence viewers* embraced only the former and not the latter case. On writ of error to the court for the correction of errors, the judgment of the supreme court was affirmed, but the members of the court being equally divided in opinion, the judgment of affirmance cannot be considered as settling the law There were but three opinions delivered, viz: by the CHANCELLOR and by *Senators* TRACY and WILLES. On the main question, Senators Tracy and Willes concurred with the supreme court, whilst the Chancellor differed in opinion, and held that, under the circumstances of this case, the fence viewers had authority to appraise the damages.(a)

---

(a) The Chancellor, in the opinion delivered by him, holds that an appraisement of damages by the fence viewers, is a necessary preliminary to an action for the injury sustained ; that the decision of the fence viewers is *conclusive* as to the *amount of damages,* and the *insufficiency of the fence ;* but is *not conclusive* as to the facts of a *previous division of the fence,* and that the injury happened *in consequence of a defect* in the defendant's portion of the fence : both which facts, he is of opinion, must be established by proof *dehors* the certificate of the fence viewers. The Chancellor is also of opinion, that for an injury of the nature of that complained of in this case, an *action on the case* does not lie.

Senators Tracy and Willes concur in opinion with the Chancellor, that the certificate of the fence viewers is *conclusive* as to the amount of damages ; but in all other respects they hold, that the party claiming to recover, is bound to establish his right by due proof in a suit to be commenced by him.

Senator Tracy is also of opinion, that the 43d § of the act, which authorizes fence viewers to subpœna, swear, and examine witnesses on all questions submitted to them, refers only to such questions, which, by the previous sections of the act, parties are compelled to submit to their decision, and perhaps to such as the parties should voluntarily submit to the determination of the fence viewers.

Clark v. Brown.

[214]    Error from the supreme court.   Clark and Brown were the owners
of adjoining farms.   The cattle of Clark passed from his farm, where they
were pasturing, over a defective fence to the farm of Brown, where they ate so
much unripe corn there growing as to kill them.   Clark called upon the *fence
viewers* of the town in which the premises were situated, to appraise his damages.
The fence viewers, after hearing the proofs and allegations of the parties, ap-
praised the damages of Clark at $50, and gave him a certificate to that effect.
He commenced a suit in a justice's court against Brown, declaring upon the cer-
tificate, claiming $50.   Brown pleaded the general issue, and denied that he
was liable to repair the fence over which the cattle of the plaintiff were said to
have passed, alleging that the fence had never been divided; he also denied
that the cattle died in consequence of eating the corn, and insisted that the
appraisement of damages was uncertain, irregular, and void.   The plaintiff
recovered in the justice's court $50, upon which judgment was rendered.
The defendant removed the cause by appeal into the Saratoga common. pleas.
On the trial in that court, the certificate of the fence viewers was read in
evidence, and one of them testified that when they viewed the premies, *Brown*
insisted that the fence where the cattle got over had not been divided; and
          that to   enable  him  to  prove  that fact, an · adjournment was  had.
[215] The following facts were then stated by the defendant's counsel, and ad-
          mitted by the plaintiff's counsel, viz : " that the parties were owners of ad-
joining farms, separated by a line fence which the fence viewers found had been
divided; that Clark's oxen were pasturing in his lot adjoining the line, and from
defects in Brown's part of the fence, as found by the fence viewers, they got over
the fence into the adjoining lot on Brown's farm, cultivated by Hix Seaman on
shares, and in that lot ate corn there growing, of which eating they died ; and
that the fence viewers allowed the value of the oxen in their certificate."   The
counsel for the defendant insisted that it was not within the jurisdiction of the
fence viewers to allow damages for an injury of this kind; that they were too
remote, and not the direct consequence of Brown's neglect to repair the fence.
The common pleas ruled, that the certificate did not preclude an inquiry into the
items of damage allowed by the fence viewers, but that the damages were such as
the statute authorized the fence viewers to allow.   The counsel for the defendant
did not admit that the fence between the defendant and the plaintiff had been
divided, or if divided, that the cattle went through the defendant's part of the
fence.   The jury, under the direction of the court, found a verdict for the plain-
tiff, on which judgment was rendered.   The defendant having excepted to the
decision and charge of the court, and procured a bill of exceptions to be signed,
removed the record into the supreme court, where the judgment of the common
pleas was *reversed ;* whereupon the plaintiff sued out a writ of error, removing the
record into this court.

The writ of error was decided in the supreme court in July, 1833, when Chief
Justice Savage, and Justices Sutherland and Nelson, were on the bench.   The
following was the opinion delivered in that court.

" *By the Court,* Sutherland, J.   The material question in the case is, whether
the damage sustained by the plaintiff was such as the fence viewers had a right,
          within the spirit of the act, to appraise.   It appeared, or was admitted,
[216] that the plaintiff's oxen were pasturing in his lot, adjoining the line fence,
          and from defects in Brown's part of the fence, they got into Brown's lot,
where corn was growing, and ate so much of it that they died.   The assessors
gave the plaintiff the value of the oxen.   I consider the defendant's counsel as
having admitted that the cattle got into Brown's lot, from the defects in Brown's
part of the fence.   In his opening, he stated all the facts of the case, which the
opposite counsel admitted, and there was in truth no proof of any thing but the
certificate or appraisement of the fence viewers.

The only question then is, whether the damage sustained by the plaintiff was

within the jurisdiction of the fence viewers.    We are of the opinion that it was not; that the legislature contemplated only the ordinary injury which results from defective fences; such as the treading down and destruction of corn, wheat, and other crops, grass, &c., the extent of which can be ascertained by the inspection of fence viewers.    Their judgment upon the matter is summary, and I apprehend conclusive.    The statute makes them arbitrators between the parties.    There is no appeal from their award.    It is conclusive, if they keep within their jurisdiction.    That jurisdiction ought not to be extended by construction, as it takes from the defendant the right of trial by jury, and may subject him to enormous damages.    The loss of the plaintiff's cattle was not the direct and necessary consequence of the neglect of the defendant to repair his fence.    Suppose the cattle had escaped through the fence and strayed away, and had never been found, or found only after great trouble and expense, are the fence viewers definitively to settle the liability of the defendant, and the extent of the plaintiff's damages in such a case?    They certainly are not a more competent or convenient tribunal for the investigation of such a matter than an ordinary jury.    The plaintiff in such a case has the ordinary remedy by action on the case, in which he can recover adequate compensation for any consequential injury, which he can satisfy a jury he has sustained, from the negligence or misconduct of his neighbor.

We do not believe that a case like this was within the contemplation of [217] the legislature, in the summary jurisdiction given to the fence viewers by this act.

Judgment reversed.

The cause was argued here by
J. Ellsworth, for the plaintiff in error;
S. Stevens, for the defendant in error.

*Points raised and argued for plaintiff in error:*

I. The submission to the fence viewers, as arbitrators, embraced *all kinds of damage* accruing from defective fences built according to the statute.    1. All obligation to build fences depends upon the statute.    (3 *Kent's Comm.* 438, 2a ed. ; 1 *Cowen*, 81, *and cases and statutes there cited.*)    2. Where the statute gives the right, and furnishes the remedy, that remedy must be pursued.    (6 *Bac. Abr. tit. Stat. G.*; 1 *Plowd.* 206 ; 2 *Cov. & Hughes' Dig.* 1304, *tit.* 14, § 18 ; 3 *Mass. R.* 207.)    3. General words in a statute must receive a general construction, unless there be some ground in the statute itself for restraining their meaning by reasonable construction, and not by arbitrary addition or retrenchment.    (2 *Bridg. Dig.* 548 ; 17 *Ves.* 91 ; 1 *Plowd.* 353.)    4. The other provisions call for a liberal construction.    (6 *Bacon's Abr. tit. Stat.* 1, 2 ; 15 *Johns. R.* 281, 2.)

II. The certificate of the fence viewers is conclusive as to the amount of damages.

III. But if the certificate is not conclusive, the damages were properly allowed.

*Points raised and argued for defendant in error:*

I. The damage sustained by the plaintiff was not within the jurisdiction of the fence viewers.    1. The provision of the statute, (1 *R. S.* 354, § 37,) was intended by the legislature to embrace only the direct and ordinary injuries which result from defect of fences; such as the treading down and destruction of grass, corn, wheat, and other crops, or injuries of a similar description, the extent of which can be ascertained by the inspection of the fence [218] viewers.    2. The loss of the plaintiff's cattle was not the direct and necessary consequence of the defect of the fence.    3. The defect of fences should be the proximate cause of the damage, to render the defendant liable in any form, upon the bare fact of the defect of fences.    (*Flower* v. *Adam*, 2 *Taunt.* 314, 316.)    In cases of tort, the damage must be the legal and natural consequence of the act or omission imputed to the defendant.    (1 *Chitty's Pl.* 443 ed.

Clark v. Brown.

of 1833; Butler v. Kent, 19 Johns. R. 228.) The act, or omission, and the injury, must stand in the relation of cause and effect. 4. In this case, the omission imputed to the defendant, is the neglect to keep up his fence—the injury or damage, the death of the oxen. This, we insist, is not the *necessary* consequence of the omission; they do not stand in the relation to each other of cause and effect. The injury is remote, not proximate; and whether the defendant would be held liable for it in an action on the case, would depend upon other considerations in connection with the omission to repair the fence.

II. The jurisdiction intended to be given to the fence viewers by this statute, should not be extended by implication or construction, but should be taken strictly, because it deprives the party of the right of trial by jury.

III. But if the damage claimed by the plaintiff was such as the fence viewers had a right to appraise, still we submit the plaintiff did not show sufficient to entitle him to recover in the common pleas. That court, therefore, erred in deciding that the evidence was sufficient, and in directing the jury to find for the plaintiff. For this reason, the supreme court was right in reversing the judgment of the common pleas. 1. The statute only authorizes the fence viewers to assess or decide upon the amount of the damages. They are not authorized to adjudge or determine whether the defendant is bound or liable to pay those damages. In a suit, therefore, to recover those damages, the plaintiff is bound to prove a state of facts, showing defendant liable, and then the appraisement is conclusive as to the amount. 2. There was no evidence in this case that [219] the fence had been divided, or that the cattle got through defendant's part of the fence. This objection was taken at the trial, and overruled by the common pleas.

IV. The fact offered to be proved by the defendant, that his farm was in the occupation of a tenant, furnished a valid legal defence to this claim. The occupant, and not the owner, is liable for damages arising from defect of fences. (*Cheetham* v. *Hampson*, 4 *Term R.* 318.)

After advisement, the following opinions were delivered:

By the CHANCELLOR. Owing to defects in the partition fence between the lands of the plaintiff, Clark, and of the defendant, Brown, the oxen of the former escaped from his lot into the cornfield of Brown adjoining the same, and were destroyed in consequence of eating unripe corn. The fence viewers, upon being called upon to view the fence, and to appraise the damage which Clark claimed for the loss of his oxen, by reason of the alleged neglect of Brown to keep his part of the partition fence in repair, after hearing the proofs and allegations of the parties, and viewing the premises, appraised the plaintiff's damages at $50, and gave him a written certificate thereof, according to the directions of the statute. For this sum as settled damages, the plaintiff was permitted to recover before the justice, and also upon the defendant's appeal to the court of common pleas. The supreme court, however, reversed the judgment upon the sole ground that this was not an injury for which the fence viewers were authorized to ascertain and appraise the amount of damages which the plaintiff had sustained by the neglect of the defendant to keep his portion of the fence in repair. This, therefore, is the important question upon which the affirmance or reversal of the judgment of the court below depends in this case; though there are some minor points necessary to be considered, in settling the form of the judgment to be given here, if this court should arrive at the conclusion that the decision of the supreme court upon this question was wrong.

In interpreting the language of a statute, or in construing its provisions [220] with a view to carry into effect the intent of the legislature, it is necessary to take into consideration the defects in the pre-existing law on the subject, the nature and extent of the change which the statute was intended to introduce, and the remedy or means provided or contemplated by the legislative power for carrying such change into practical effect; and where the statute is remedial

Clark v. Brown.

and intended to provide against existing defects in the common law, it should receive a liberal or comprehensive construction, both as to the extent of the change and the means of carrying it into effect, as a strict or close construction of a remedial statute is less likely to correspond with the probable intention of the legislature, where the language of the statute is such as to leave the actual intention in relation to the particular case a matter of doubt. Again : where a remedy existed at the common law for the wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged, or a summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election. (2 *Coke's Inst.* 200. 6 *Price's R.* 137. 15 *Johns. R.* 220.)   So also, if a new right is created by statute, and no remedy is prescribed for the party aggrieved by the violation of such right, the court, upon the principle of a liberal or comprehensive interpretation of the statute, will presume that it was the intention of the legislature to give to the party aggrieved a remedy by a common law action for the violation of his statutory right, and he will be permitted to recover in an appropriate action founded upon the statute. (2 *Coke's Inst.* 74, 118.   *Bic. Abr. Statute* 16. 7 *Mass. R.* 292.)   But where a statute creates a new right and prescribes the remedy for a violation of that right, the party aggrieved by a violation of the right, must pursue the remedy given to him by the statute, and cannot resort to any other. (*Almy* v. *Harris,* 5 *Johns. R.* 175.   *Smith* v. *Drew,* 5 *Mass. R.* 514.)

By applying these principles to the case under consideration, it is evi- [221] dent that the learned judge who delivered the opinion of the supreme court erred in supposing that the plaintiff could have recovered in an action on the case, or in any other action, for the injury which he had sustained by the neglect of the defendant to repair and maintain his part of the partition fence, without having his damages ascertained and appraised by the fence viewers in the first instance, according to the provisions of the statute.   It is perfectly well settled that no action could have been sustained at the common law in such a case, as by the common law no man was bound to fence against the cattle of others.   The owner of cattle was bound at his peril to restrain them so as to prevent them from trespassing upon the lands of his neighbor, and if he neglected to do so, he was not only precluded from recovering damages for any injury which the cattle might sustain by going upon the lands of others, but he was himself liable to make compensation for the trespass committed by his cattle. (*Bush* v. *Brainard,* 1 *Cowen's R.* 78.   *Holladay* v. *Marsh,* 3 *Wend. R.* 142.   *Rust* v. *Low,* 6 *Mass. R.* 94.   *Little* v. *Lathrop,* 5 *Greenl. R.* 356.)   The effect of the statute requiring each of the owners of adjoining lands to keep up and maintain his proportion of the partition fence after it has been divided, is to protect each from liability for any trespass committed upon the lands of the other by reason of any defect in that part of the fence which the latter was bound to keep up; and if the cattle of the party whose portion of the fence is defective, trespass upon his neighbor in consequence thereof, the latter may have his damages appraised by the fence viewers according to the provisions of the 37th section of the statute, instead of resorting to his common law action of trespass.   In such a case, however, the remedy prescribed by the statute is merely cumulative, as the statute does not, either in terms or by necessary implication, deprive him of his common law remedy by action of trespass, for the injury done by the cattle of the party who was bound to maintain that part of the fence.   He may, therefore, bring an action at common law for the trespass, or may have his damages appraised by the fence viewers, at his election. But there are some cases of injury which may arise under the provisions of the statute relative to partition fences, for which no [222] right of action or remedy existed at the common law against the owner of the adjoining close, who was not bound by agreement or prescription to make or main

Clark *v.* Brown.

tain the partition fence.    One case of that kind is the one now under consideration, in which no action could have been sustained at the common law, as was very correctly decided by the supreme court in the case of *Bush* v. *Brainard*, before referred to.    Another case which was equally unprovided for by the common law, is that of an injury done upon the lands of a party by his own cattle, or by the cattle of a third person, in consequence of the neglect of the owner of the adjoining close to make or maintain his proportion of the partition fence according to the directions of the statute.    As no action could be maintained against the owner of the adjoining close, in such cases, at the common law, and as the statute has prescribed the remedy to be pursued in all cases where a new right has been acquired under its provisions, these cases were either not intended to be provided for by the statute, or the party aggrieved must pursue the statutory remedy of having the damages ascertained and appraised by the fence viewers, before he can maintain an action for the recovery of such damages    Whether the certificate of the fence viewers was intended by the legislature, in any case, to be conclusive as to the right of the party to recover damages under the statute, or whether it was only intended to be conclusive as to the sufficiency of the partition fence and as to the amount of damages, when the plaintiff's right to damages in the particular case had been established by him in the action brought upon such certificate, is another and a very different question.

So far as regards the right of the plaintiff to recover a compensation for such an injury, I think, that upon the principles of construction before stated, this statute should receive a liberal or comprehensive, as contradistinguished from a strict or close construction, for the purpose of carrying into effect the change in the law on this subject, which the legislature intended to make.    The statute is founded upon that great principle of natural equity, which requires [223] each party who is to share in a common benefit, to contribute his ratable proportion of the expense, and if by reason of the neglect of the defendant to maintain his proportion of the division fence, according to the directions of the statute, his corn has been the means of destroying his neighbor's cattle, there is no good reason why he should not make compensation for the injury, in the same manner as he would be bound to do if his cattle, in consequence of a similar neglect on his part, had followed their natural instinct, and destroyed his neighbor's corn.    It does not necessarily follow in either case, that a neglect to keep up a lawful fence will produce the injury, and it is much more likely that cattle will destroy the corn, than that the corn will destroy the cattle; but from the instinct of the animals, both events are so very likely to occur, that it would be too much to say that the legislature intended to provide for one case and not for the other, when there is no distinction in principle between the two cases, which should exempt the defendant from liability in either, and where the language of the statute is equally applicable to both.    The learned judge says "the loss of the plaintiff's cattle was not the direct and necessary consequence of the neglect of the defendant to repair his fence."    To this, it may be answered, that the destruction of the corn was not the direct and necessary consequence of such neglect; as the cattle might, perhaps, have remained in the adjoining field for many weeks without discovering that the fence was so defective as to enable them to get to the corn.    But when they did break through the fence and destroy both themselves and the corn by the same act, I cannot perceive that the destruction of the one was not as directly connected with the defendant's negligence as the other, although the simple destruction of the corn was the most likely to occur.    The proper answer to this objection, however, is that the statute has not confined the defendant's liability for damages, to injuries which are the direct and necessary result of his neglect to keep his portion of the fence in repair, as injuries of that kind will seldom, if ever, occur.    The statute is, that the 224] party who neglects to keep up his portion of the division fence, *shall be liable to pay to the party injured, all such damages as shall accrue thereby.*    To

### Clark v. Brown.

exempt him from liability, the injury or damage to the other party must be so remote, that it cannot be properly said to have arisen *in consequence of the neglect* to keep up the division fence. I conclude, therefore, that the injury for which this suit was brought, was one for which the defendant was liable in some form, under the provisions of the statute. Indeed, this appears to be conceded by the supreme court.

The next question is, whether the plaintiff was right in supposing that he must get his damages appraised by the fence viewers, before he could be permitted to recover compensation for such injury. If I am correct in supposing that where a new right is created by statute, to which a party was not entitled by the common law, and the remedy of the party for the infringement of such right is prescribed in the same statute, the party injured must pursue the remedy thus prescribed, and cannot resort to any other, it is evident that the ascertainment and appraisal of his damages by the fence viewers, was a preliminary step which it was necessary for him to take before he could sustain an action to recover compensation for the supposed injury; and that the decision of the fence viewers was conclusive upon both parties as to the *amount of damages* which the plaintiff was entitled to recover, if the right secured to him by the statute had been impaired by the defendant's neglect to keep his proportion of the division fence in repair. The same clause of the statute which makes the party who has neglected to keep up and maintain his part of the fence, answerable for all damages which the party injured may sustain by reason of such neglect, limits the claim of the latter to damages *to be ascertained and appraised by the fence viewers;* which appraisement is to be reduced to writing and signed by them, before any action can be brought thereon to recover such damages. (1 *R. S.* 354, § 36.) I think, therefore, that the decision of the supreme court, that this was not a proper case for an appraisal by the fence viewers, and that an action on the case could have been sustained without having the damages thus appraised in [225] the first instance, was clearly wrong; and that so much of the judgment of that court as was the result of such erroneous decision, should be reversed.

It appears to have been taken for granted, both in the court of common pleas and by the supreme court, that if the fence viewers had jurisdiction or authority to ascertain and appraise the amount of the damages which the plaintiff claimed to have sustained in consequence of the neglect of the defendant to keep up and maintain the part of the division fence in question, their decision was also conclusive as to the question whether there had been in fact *a previous division of the partition fence* between the parties, or those from whom they had derived their titles, by which this portion of the fence belonged to the defendant to repair and maintain. I think, however, that this is not the fair and reasonable construction of the statute, and that in an action upon the certificate of the fence viewers as to the amount of the damages which the complainant had sustained by reason of the alleged defect in the defendant's part of the division fence, the plaintiff was bound to show, if the facts were denied, not only that the fence had been divided so that this part of the fence belonged to the defendant to repair, but also that the oxen got into the corn over or through this part of the fence. As this part of the statute introduces a new mode of proceeding to ascertain the amount of the plaintiff's damages, which is contrary to the course of the common law, the authority of the fence viewers to settle the rights of the parties, should not be extended by implication beyond the plain and obvious meaning of the statute. The power to fix the amount of damages which the plaintiff had sustained by reason of the alleged neglect of the defendant, is clearly given by the terms of the statute; and the right to decide the question as to the sufficiency of the fence, might, perhaps, be fairly inferred from the very nature of the office which the fence viewers hold. Besides, this mode of ascertaining the extent of the injury which the plaintiff had sustained, if he was entitled to recover any thing, by actual view of disinterested public officers immediately after the injury had

occurred, would, in most cases, be less likely to produce injustice than the [226]. testimony of partial or prejudiced witnesses upon a regular trial by jury at some future period; but there does not appear to be any good reason for taking the question as to the previous division of the fence, from a jury, and submitting it to the summary decision of the fence viewers, who have no other means of deciding such a question than the ordinary evidence, which might with equal advantage be introduced upon a jury trial. No inference in favor of the power of the fence viewers to decide such a question, can be drawn from the fact that the Revised Statutes have authorized them to *examine witnesses* upon all questions submitted to them, as this power to appraise damages is taken from a similar provision in a previous statute, which contained no authority for the fence viewers to examine witnesses in any case; and the examination of witnesses may frequently be necessary in cases which the legislature unquestionably intended to submit to the decision of the fence viewers, both in the appraisement of damages and in proceedings under the 32d section of this title of the statute.

This principle of requiring the owners of adjoining lands to maintain their respective portions of the division fence, and rendering them liable to each other for all damages sustained by reason of the neglect of such duty, *to be appraised by the fence viewers*, appears to have been introduced into our statutes at a very early day. It is found in the colonial act of 1750, (1 *Van Schaack's Laws of N. Y.* 290, § 3,) where it appears to have been the intention of the legislature to make the decision of the fence viewers conclusive as to the right of the party claiming damage by reason of the neglect of the adverse party to maintain his proportion of the division fence, for the amount of the damages as appraised by the fence viewers was to be levied by an execution issued by a justice of the peace without the formality of a suit. In the revision of the laws, which took place shortly after the revolution, (2 *Greenl. Laws*, 172, § 18,) the provision is altered in this respect, and the amount of damages after being appraised and ascertained by the fence viewers, instead of being collected by summary process, is [227] to be recovered by a regular suit, in any court having cognizance thereof.

The provision, as thus altered by the act of March, 1788, is retained in the several subsequent revisions of the laws in nearly the same words. In making this change in the original provision, as found in the statute of 1750, the legislature of 1788 seem to have supposed that questions might arise, notwithstanding the appraisement of the damages by the fence viewers, which it was proper to have settled upon a regular trial in the usual way; and from this I infer that the legislature did not intend to make the decision of the fence viewers conclusive upon the rights of the parties, except as to the sufficiency of the fence and the amount of the damages sustained by the supposed neglect of the party against whom such damages were claimed. The conclusion at which I have arrived in this case therefore is, that the injury of which the plaintiff complained was one embraced by the Revised Statutes, and for which the fence viewers were authorized to ascertain and settle the amount of damages; but that the plaintiff was not entitled to recover on the certificate of the fence viewers, without establishing the fact, which was denied by the defendant in his plea, and not admitted on the trial in the court of common pleas, that the fence had been divided; and that the oxen got into the corn through or over that part of the fence which the defendant was bound to repair or maintain. The supreme court, therefore, instead of deciding against the plaintiff's right to recover in this action, and reversing the judgment of the court of common pleas generally, should have reversed that judgment for the defect of proof in relation to the division of the fence, &c., and should have awarded a *venire de novo* to enable him to supply that defect upon a new trial. For these reasons, the judgment of the supreme court should be reversed in this respect, so that the proper judgment in the case may be rendered in this court.

By Senator TRACY. The revisors certainly have not succeeded in their ex-

Clark *v.* Brown.

pressed intention " to remove the ambiguities and supply the deficiencies of the old statutes relative to division and other fences," for the article on this subject (1 *R. S.* 353) presents several questions of greater or less difficulty [228] which probably can only be resolved by judicial construction. The one which the present case involves is not free from embarrassment, and the solution of it must perhaps finally depend more upon general considerations, than upon any clear logical deduction which the language of the statute affords the means of making.

The provision of the 37th section, (page 354,) which is taken substantially from 2 *R. L.* 133, § 17, is, that if any person liable to contribute to the erection or reparation of a division fence, shall neglect or refuse to make and maintain his proportion of such fence, or shall permit the same to be out of repair, he shall be liable to pay to the party injured all such damages as shall accrue thereby, to be ascertained and appraised by any two fence viewers of the town, and to be recovered with costs of suit. It cannot be doubted that this provision was intended to afford to the party injured, a convenient and efficient remedy for the culpable negligence of his neighbors ; and to this end it is reasonable and proper that the appraisement of the fence viewers as to the amount of damages should be conclusive ; but what description of damages is intended to be here provided for, and whether the certificate of the fence viewers shall be conclusive of any other matter than the mere amount of damages, are the difficult questions which this case suggests. In regard to the latter point, I am disposed to conclude that the decision of the fence viewers should be confined to the matter of the amount of damages, leaving it to the party who has sustained them, to establish by suit the person who is to be made liable to respond them. Unless this construction is adopted, it seems to be unavoidable that there would be frequently devolved upon the fence viewers, questions as well as to the ownership or occupancy of the adjoining lands, as to the cause of the damage, which such a tribunal would be so unfit summarily to decide, as to warrant the conclusion that the legislature did not intend to confer the power upon it. Other provisions of the statute seem to sustain this conclusion, by giving a remedy by suit without the intervention of the fence viewers in cases where their intervention, for every purpose but [229] that of ascertaining the amount of the damages, would be as convenient and proper as in this. Nor is the 43d section, which authorizes the fence viewers to subpœna, swear and examine witnesses on all questions submitted to them, inconsistent with this conclusion ; for this provision evidently refers to those questions which, by the previous sections, parties are compelled to submit to their decision, and perhaps may be properly construed to extend to such other questions as the parties should voluntarily submit.

Upon the question what damages it is the duty of the fence viewers to ascertain and appraise, I incline to agree with the supreme court, that their power is confined to those damages which are the direct and necessary consequence of the neglect of the party to make or maintain his fence. We are hardly at liberty to suppose that the legislature intended to vest in two fence viewers, who might be of the party's own selection, an arbitrary and uncontrollable power to determine absolutely the amount of consequential damages, which they might imagine had followed a party's neglect to repair his fence. It would be clothing them with a vague discretion, the undefined exercise of which the law does not confide to its highest judicial functionaries. It is unnecessary to suppose cases of remote, uncertain, and contingent damages, which such a power in the fence viewers might be extended to embrace, for it is difficult to conceive a case where every damage or injury that resulted to a party, subsequently to the neglect of which he complained, might not, by specious ingenuity, be traced back to the dilapidated fence as one of its causes. The rule of law is well established, that in cases of *tort* it is necessary for the party complaining to show that the particular damages in respect to which he proceeds, are the *legal* and *natural* consequences of the wrongful act imputed to the defendant. (1 *Chitty's Pl.* 388. 8 *East*, 3. 2

Clark v. Brown.

*Taunt.* 314. 19 *Johns. R.* 228.)  It is not credible that the legislature intended that so inferior a tribunal as one composed of two fence viewers should be [230] absolved from this salutary rule; or what amounts to the same thing, if they absolved themselves from it, their decision should be conclusive of the rights of the parties.

The language of the statute, "all such damages as shall accrue thereby," is undoubtedly in one sense general, and the argument is therefore fair, that in this sense it should receive a general construction, unless there be some ground in the statute itself for restraining its meaning by reasonable construction.  I think such ground is furnished without pressing into its support the doubtful and somewhat dangerous authority which is sometimes claimed by judges, of moulding statutes " according to reason and convenience, to their best and truest use ;" for other sections of this statute show it to be the object of the legislature, to enforce the obligation of maintaining division fences by subjecting the party failing, to make good to the other party the injury which a breach of this obligation occasions, and this by enabling him to make or repair the fence himself, and recover the expense of the defaulting party, or to recover of him the damages which shall accrue to him by reason of the non-erection or repair of the fence.  The 40th section provides that when a fence shall have been removed, without the notice or permission required by the act, the party who has removed it shall pay to the other party " all such damages as he may sustain thereby."  It cannot, I think, be contended that the damages here referred to extend beyond the value of the use of the land thus left unenclosed, or at most the value of the crops then growing thereon and thereby destroyed.  It is an old maxim that a statute which gives a new remedy ought not to receive a liberal construction, (2 *Sid.* 63 ;) and perhaps a still older one, that a statute creating a new jurisdiction ought to be construed strictly.    (10 *Rep.* 75.)   To give to this statute the force of a mutual and express contract between the parties, to make and maintain their division fence, and in default to pay all damages, is certainly giving to it as liberal a construction for the injured party as can properly be claimed ; but construing it on this principle, it is very plain that on a recovery for the breach of such a contract, a court would be bound to restrain the damages to those which were the natural and immediate result of the [231] default.   In *Flureau v. Thornhill*, (2 *Black. R.* 1078,) the seller of a house by auction could not make a title, and the jury gave the buyer, besides his deposit, a compensation in damages for the loss of his bargain, which was disallowed, and a new trial granted, on the ground that such damages were contingent, and not contemplated in the contract.   The rule of the civil law, where there has been no fraud, and the party is merely in fault for not performing his obligation, is to subject him only to such damages which might have been contemplated at the time of the contract, and not to such as may fortuitously have resulted from its violation.    *Pothier (part* 1, *ch.* 2, *art.* 3) says : In general the parties are deemed to have contemplated only the damages which might be suffered from the non-performance of the particular thing which is the object of the contract, and not such as may have been incidentally occasioned thereby in respect to the other affairs of the injured party ; and therefore the defaulting party is not answerable for these, but only for such as are suffered in respect to the thing which is the object of the obligation.

I am satisfied that we ought not to impute to the legislature a more comprehensive meaning of damages, than courts would impute to parties who had used the term in contracts made by themselves ; and I am persuaded that no court of law would hold, that if a party whose field was thus left unfenced should proceed to plant it or to depasture it, he could recover damages for the destruction of the crops thus afterwards planted, or for the straying of cattle turned upon such unenclosed field.    Damages like these, though they might have their remote source in the unlawful removal of the fence, have their more proximate and efficient cause in the folly or wilfulness of the party suffering : at any rate, are not those neces-

Clark v. Brown.

sary and direct damages resulting immediately from the default of the other party, for which alone the legislature intended to provide. I cannot doubt that the damages which the 37th section authorizes the fence viewers to ascertain, should be, at least, of a nature as direct and proximate as the damages to be recovered by suit under the 40th section.

In this view of the case, without concluding certainly, although my mind [232] is that way inclined, that the fence viewers have no authority to ascertain any other damages than such as are immediately connected with the insufficiency of the fence, I am satisfied that the statute does not contemplate consequential damages—certainly not those remote damages which, not being the direct and necessary consequence of the default complained of, judges in courts of law could not permit to be recognized and recovered. Here damages have been given to the plaintiff for the value of his cattle, which broke from his own close into the defendant's, and there killed themselves by over-eating corn. This result cannot be regarded as the direct and natural consequence of the defendant's part of the division fence being out of repair. The death of the cattle, though in some measure deducible from the ill-conditioned state of the fence, was a casualty, which it is irrational to suppose that the legislature contemplated as an item of the damages which the fence viewers were to ascertain. Besides, there is an intervening and consequently more proximate cause for their death, to be found in the act of the plaintiff, who, by turning them into a field insufficiently fenced, exercised a more direct agency in bringing about the result, than the defendant did by neglecting to repair the fence. If the defendant had neglected to build any fence whatever, the plaintiff's claim under this section of the statute would be the same it now is; yet the injustice of indemnifying against the consequences of his own imprudence and folly, had he turned them into an unenclosed field, from which they could have free access to the corn growing on the defendant's adjoining field, though it might be deemed more glaring, could not probably be shown to be more positive than to indemnify him in the present case. I am, therefore, for affirming the judgment of the supreme court.

By SENATOR WILLES. It is contended that the fence viewers were authorized to act as arbitrators between the parties, and in addition to appraising the damages sustained, were empowered to determine all the facts necessary to establish the liability of the defendant, and the right of the plaintiff to [233] recover; and that their certificate of the appraisal is equivalent, in all its legal consequences, to an award of arbitrators. It is claimed, that this authority is conferred upon them by the provisions of *art. 4, tit. 4, ch.* 11, of the first part of the Revised Statutes, entitled " of division and other fences." It seems that the fence viewers so understood the statute; the common pleas gave it the same construction; and the learned judge who delivered the opinion of the supreme court in this cause, says expressly, " the statute makes them arbitrators between the parties. There is no appeal from their award." It therefore becomes necessary to examine, with some care, those provisions of the statutes, which are supposed, by such high authority, to confer such ample power upon this class of town officers.

These officers are created by statute, and are not invested by it with any general power. Their authority is given, and their duties are prescribed, in the same provisions of the statutes which call for their action, and they possess no other. They can take nothing by implication. The cases in which they are required to act are few, and their duties in each case are explicitly defined. They are authorized to determine the proportion and part of a partition fence, to be made and maintained by each adjoining owner, (1 *R. S.* 353, § 33,) and also to permit the same or any part thereof to be discontinued, (§ 39.) They are likewise authorized to appraise damages done upon premises by beasts, and by inanimate things, (2 *R.S.* 517, § 1, 2, and 518, § 8, 9, and 1 *R. S.* 698, § 1, 2, 3,) to ascertain the charges of keeping strays, (1 *R. S.* 351, § 21,) *and to inquire into*

Clark *v.* Brown.

*and certify* the amount of damages sustained by the owner of sheep killed by dogs, (1 *R. S.* 704, § 10.) Where beasts are *distrained* doing damage, if any dispute arise touching the sufficiency of any fence around the premises where the damage was done, the fence viewers are in that case, and *in that only*, authorized to determine whether such fence was sufficient or insufficient. (2 *R.S.* 517, § 3.)

They are authorized to act upon their own knowledge *on view*, and not [234] otherwise; they may issue subpœnas, swear and examine witnesses for the purpose of enabling themselves to overcome any inability to acquire on view a perfect knowledge of the subject upon which they are to act; but for no other purpose. Thus, it will be seen, their action is confined to the dividing and discontinuing of partition fences, the appraisement of damages, and, in a single case, determining the sufficiency or insufficiency of fences. They can do nothing else in their official capacity, under the authority of law. In the division or discontinuance of partition fences, the fence viewers act with reference to the parties in interest, and therefore, in that case, the moving party is required to give notice to the other party, who has the right secured to him to choose one of the two fence viewers. In that case, it will be perceived, their decision can embrace nothing but the division or discontinuance of a partition fence. In every other case, their action is a mere appraisement on the application of an individual, wholly *ex parte*, without reference to the parties in interest, and without notice to any body. Can the certificate of such an appraisal be legitimately treated as an award of arbitrators? This is certainly a grave question in its bearing upon the rights of individuals, and it would seem that it must be involved in some obscurity that I have not been able to perceive, to have enabled it to find a favorable passport through all the courts, from the *fence viewers' court* up to this court.

It is claimed that the authority contended for, is conferred upon the fence viewers by the 37th section of the article above referred to, which is in these words: "If any person who is liable to contribute to the erection or reparation of any division fence, shall neglect or refuse to make and ma. in his proportion of such fence, or shall permit the same to be out of repair, he shall be liable to pay to the party injured, all such damages as shall accrue thereby, to be ascertained and appraised by any two fence viewers of the town, and to be recovered with costs of suit. The appraisement shall be reduced to writing, and signed by the fence viewers making it." The efficient words in this section are these: *To be " ascertained and appraised by any [235] two fence viewers of the town."* Surely, a very brief mode of creating a court, "from whose decision there is no appeal," and which may subject a party to "enormous damages," especially when we consider that the proceedings may be wholly *ex parte*, as notice is not required to be given to any one. Courts are required to give to statutes a reasonable construction. The construction contended for, in my opinion, is unreasonable. The section creates the liability of the delinquent, and gives a right of action to the party injured to recover his damages. Does it authorize the fence viewers to arbitrate this matter between them? Far from it. The requirement that the damages shall be appraised by two fence viewers, is designed as a restraint upon the plaintiff for the protection of the defendant. Such controversies are not always conducted in good temper or in good conscience. The damages are supposed to be on the premises of the plaintiff, where the defendant and his witnesses cannot go, even for the purpose of viewing the damages, without trespassing. Should the plaintiff, then, with this advantage over the defendant, be allowed to trump up damages, upon estimates of any persons who are competent to testify in court— his domestics or dependants? The statute has very properly required him to procure the appraisement of his damages by two persons, who, from their official station, are entitled to confidence, both as to integrity and judgment. The appraisement must be reduced to writing and signed by the fence viewers. It is

then evidence of the amount of the damage, and nothing more. Whatever else it contains, is surplusage, and should be rejected by the court. Not even an adjudication as to the sufficiency or insufficiency of any fence contained in such certificate of appraisement, can be used as evidence in this form of action, for the fence viewers are not authorized to make it. Unless the name of the office confer that power, it is not to be found in the statutes, except in the single case of *distress of beasts* doing damage.

If I am right in the view I have taken of this branch of the case, it becomes unnecessary to consider the other. The supreme court were of the opinion, that the damage sustained by the plaintiff, could not be recovered [236] in this form of action. I concur in that opinion.

On the question being put, *Shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* The President of the Senate, the Chancellor, and *Senators* Armstrong, Beckwith, Downing, Edwards, Johnson, Lawyer, Spraker, Sterling, Tallmadge—11.

*In the negative:* Senators J. Beardsley, H. F. Jones, Lacy, Livingston Loomis, McLean, Maison, Tracy, Van Dyck, Wager, Willes—11.

Whereupon the judgment was affirmed.