## FIELD v. THE CITY OF DES MOINES.

1. **Municipal Corporations:** POWERS: LIABILITY FOR ACTS OF OFFICERS. Municipal corporations are limited to the exercise of powers expressly conferred by statute, and they are not liable for the acts of their officers under an ordinance which they were not empowered to pass.

2. ———: ———: DESTRUCTION OF PRIVATE PROPERTY TO PREVENT THE SPREAD OF FIRE. That the officers of a municipal corporation are authorized to direct the destruction of private buildings and other property to prevent the spread of fire, does not make the corporation liable to the owners for the property thus destroyed, in the absence of an express statute or provision in the charter, creating such liability.

3. ———: ———: ———. The authorities considered which hold that a liability for property thus destroyed does not exist at common law, and is only created where the statute of the state has made the corporation responsible.

4. ———: EMINENT DOMAIN. The destruction of private property to prevent the spread of conflagration is not a taking of private property for public use, entitling the owner to compensation from the city.

> *Argument 1.* It is not among the purposes for which the right of eminent domain is conferred upon cities. (*Rev., Secs.* 1064, 1065, 1066, 1067.)
>
> *Argument 2.* The statute does not confer upon municipal corporations the right to appropriate private property without *first* making compensation therefor.
>
> *Argument 3.* The destruction of private property in such cases is an exercise of the right which individuals possess to destroy private property in cases of imperative public necessity.

### *Appeal from Polk Circuit Court.*

THURSDAY, OCTOBER 22.

ON the 17th day of January, 1874, the plaintiff filed his petition stating, in substance, that the defendant is a municipal corporation, organized under the laws of Iowa; that on the

4th day of July, 1872, there was a fire in progress within the limits of the city, and near the buildings of the plaintiff; that there was then in force an ordinance of the city, passed December 10th, 1868, entitled " An ordinance establishing and regulating a Fire Department," Section 16 of which is as follows: "The engineer in command, or in the absence of the engineer, the mayor or any three trustees, may order any building, erection or fence torn down or blown up, where they shall deem it necessary to arrest the progress of and extinguish the fire." And Section 20 of said ordinance is as follows: "Every person not a fireman who shall be present at a fire shall be subject to, and obedient to the orders of the chief and assistant engineers, the mayor and trustees, fire policemen, marshal and police constables of the city, *provided*, said officers shall wear their respective badges of office, in extinguishing the fire, and the removal and protection of property, and in case such person shall refuse to obey such orders, he shall forfeit and pay a fine not to exceed five dollars for each offense, and all such officers shall have power to arrest any person or persons so refusing to obey such lawful orders as aforesaid, or suspected of stealing during the progress of the fire, and hold them in custody until after the fire is extinguished, and then to be dealt with according to law."

It is further alleged that, at the time of said fire, " the engineer in command" of the fire department of the city was absent from the city, and that said fire being in progress, the mayor assuming in that behalf to act as the agent and official representative of the city, in virtue of his powers and duties as such officer and agent, and particularly in virtue of a pretended right, and authority conferred upon and vested in him as such officer and agent, by the sections of said ordinance above set out, for the pretended and alleged purpose of arresting the progress of and extinguishing said fire, did order the bystanders to tear down two certain buildings belonging to plaintiff, situated on lot 1, in block 31, in the city and vicinity of the fire, which order was by them obeyed, and said buildings torn down and destroyed; that there was no real necessity of tearing down either of said buildings, and that in

giving said order the mayor acted carelessly, negligently and without sufficient cause; that if said buildings had not been torn down, they would not have been burned by the said fire, nor was the fire either extinguished or arrested by tearing down said buildings or either of them. The value of the buildings is alleged at seven hundred dollars, and that the plaintiff has demanded compensation therefor from defendant, which was refused.

To this petition defendant filed a demurrer which being sustained, and the plaintiff refusing to amend, judgment was rendered for defendant. Plaintiff appeals.

*Gatch, Wright & Runnells*, for appellant.

*C. P. Holmes*, for appellee.

MILLER, CH. J.—I. That any persons may "raze houses to the ground to prevent the spreading of a conflagration," without incurring any liability for the loss to the owner of the houses destroyed, is a doctrine well established in the common law. The maxim of the law is, that "a private mischief is to be endured rather than a public inconvenience." 2 Kent's Com., 338. Lord COKE says: "For the Commonwealth, a man shall suffer damage; as for the saving of a city or town, a house shall be plucked down if the next be on fire. This every man may do, without being liable to an action." *Mouse's Case*, 12 Coke, 63; Id., 13. In *Respublica v. Spurhawk*, 1 Dall., (Pa.), 383, McKEAN, Chief Justice, says: "Of this principle, there are many striking illustrations. If a road be out of repair, a passenger may lawfully go through a private inclosure. So, if a man is assaulted, he may fly through another's close. In time of war, bulwarks may be built on private ground. * * * Houses may be razed to prevent the spread of fire, because of the public good." In Dillon on Municipal Corporations, Sec. 756, the learned author states the common law doctrine as clearly and succinctly as it is any where to be found. He says: "The rights of private property, sacred as the law regards them, are yet subordinate to the higher demands of the public welfare. *Salus populi*

*suprema est lex.* Upon this principle, *in cases of imminent and urgent public necessity, any individual or municipal officer may raze or demolish houses and other combustible structures* in a city or compact town, to prevent the spreading of an extensive conflagration. This he may do independently of statute, and without responsibility to the owner for the damages he thereby sustains." The ground of exemption from liability in such cases is that of *necessity*, and if property be destroyed, in such cases, without any apparent and reasonable necessity, the doers of the act will be held responsible. In support of this doctrine, see *Governor and Company of, etc. v. Meredith*, 4 Term R., 794, 797; *Taylor v. Plymouth*, 8 Met., 462, 465; *Mayor etc. of N. Y. v. Lord*, 18 Wend., 126, 132, 133; same case, 17 *Id.*. 285; *Dunbar v. Alcalde etc. of San Francisco*, 1 Cal., 355; *Surocco v. Geary*, 3 Id., 69; *Conwell v. Emrie et al.*, 2 Cart., (Ind.) R., 35; *American Print Works v. Lawrence*, 3 Zabriskie, 590, 609, 610; same case, 1 Id., 248; *McDonald v. City of Red Wing*, 13 Minn., 38.

The plaintiff does not, however, seek to recover against the mayor who directed, and the persons who assisted in the destruction of his buildings, but he seeks to make the city liable on the principle of *respondeat superior*. It is claimed that the destruction of plaintiff's buildings was not necessary in order to extinguish the conflagration then in progress; that the act was, therefore, not justifiable at the common law, under the rule of necessity; and that since the city, by its ordinance, had authorized the mayor to judge of the emergency, and direct the destruction of the buildings, an act which any individual might do at his peril, without any statute, it thereby made the act that of the corporation.

Of course, unless the corporation had authority conferred upon it by the statutes defining its powers, to destroy buildings or other property for the purpose of arresting the progress of a fire, or the power conferred upon it to pass the ordinance set out in the petition, it could not exercise such power, and would not be liable for the acts of its officers which it had no power

1. MUNICIPAL CORPORATIONS : powers : liability for acts of officers.

to authorize. *Dunbar v. Alcalde etc. of San Francisco*, 1 Cal., 355, and cases cited; see also *The City of Burlington v. Keller*, 18 Iowa, 59; *Clark v. City of Des Moines*, 19 Iowa, 198; *Clarke, Dodge & Co. v. The City of Davenport*, 14 Id., 494; *Taylor v. District Tp. of Wayne*, 25 Id., 447.

Muncipal corporations, or certain officers thereof, are often appointed by statute, or by ordinance, authorized by charter

2. ——: ——. or statute, to judge of the emergency and direct destruction of private property the destruction of buildings and other property to erty to prevent the prevent the spread of fire; and such corporations spread of fire. are frequently, by their charters or by some statute, made liable for damages which property owners may sustain by reason of their buildings or property being thus destroyed to prevent the extension of fires. But the liability of the city or town in such cases is held to be purely statutory, and unless the statute clearly makes the corporation liable to make compensation, it is not liable at all.

In *White v. The City Council of Charleston*, 2 Hill., (South Car.) 571, which, in its facts, is essentially like the case before

3. ——: ——. us, the city council, acting under the general ——. municipal powers of the city, and without any express statute creating a liability, adopted an ordinance authorizing the Intendant, among other officers, in time of fire, to demolish such buildings "as may be judged necessary" by him to arrest the spreading of the fire, thereby investing the officer with the power to judge whether the necessity existed or not. A fire being in progress, the plaintiff's house was blown up by order of the Intendant, and the fire was subsequently extinguished before it reached the house destroyed. In an action of trespass by the owner against the city it was held that, the city being a public corporation, it was not liable to an action by individuals, unless it be given by statute. Judge DILLON, in a note to Sec. 758 of his work on Municipal Corporations, says of this case, that "the result was right, but assuming the power to pass the ordinance, the decision should be placed, we think, upon the ground that the Intendant was discharging a *public*, as distinguished from a *municipal* or *corporate* duty, and is not in this matter to be regarded

as the agent of the city, and therefore the city would not, on the principle of *respondeat superior*, be responsible for his acts." We will not stop to determine which is the true basis on which to rest the decision, for upon either ground the result is the same, that the city is not liable.

In *Fisher v. City of Boston*, 104 Mass., 87, which was an action to recover damages for personal injuries to the plaintiff caused by the alleged negligence of the officers and members of the fire department in performing their duties in putting out a fire in the city, it was held that the corporation was not liable, although the fire department was established and regulated under a special statute, which, by its terms, required acceptance by the city council before it took effect. It was said by GRAY, J., in delivering the opinion of the court, that, "the extinguishment of fires is not for the immediate advantage of the town in its corporate capacity," and it was held, that, in the absence of any express statute, municipal corporations are not liable for injuries occasioned by reason of negligence in *using* or keeping in repair the fire engines of the city.

It is further held, in the same case, that it makes no difference whether the legislature itself prescribes the duty of the officers charged with the repair and management of fire engines, or delegates to the city or town the power to define those duties by ordinance or by law.

In *McDonald v. The City of Red Wing*, 13 Minn., 38, it was held that a city is not liable for the destruction of a building torn down to arrest the progress of a fire, unless such liability is created by statute; and that it makes no difference whether such building is torn down under the direction of the city officers assuming to act in their official capacity, or by the citizens and bystanders on their own motion.

In *Wheeler v. The City of Cincinnati*, 19 Ohio St., 19, the Supreme Court of Ohio said that "the laws of this state have conferred upon its municipal corporations power to establish and organize fire companies, procure engines and other instruments necessary to extinguish fire, and preserve the buildings and property within its limits from conflagration, and to pre-

scribe such by-laws and regulations for the government of said companies as may be deemed expedient. But the powers thus conferred are in their nature legislative and governmental; the extent and manner of their exercise, within the sphere prescribed by statute, are necessarily to be determined by the judgment and discretion of the proper municipal authorities, and for any defect in the execution of such powers, the corporation cannot be held liable to individuals. *Nor is it liable for a neglect of duty on the part of* fire companies, or their officers, charged with the duty of extinguishing fires."

In *Western College, &c., v. The City of Cleveland*, 12 Ohio St., 375, which was an action against the city to recover for property destroyed by a mob, based upon a clause of the city charter, in reference to the city council, which provided that "it shall be their duty to regulate the police of the city, preserve the peace, prevent disturbances and disorderly assemblages," it was held that the duty intended was that properly appertaining to an administrative and legislative body, acting in the government of the city—the making regulations, by-laws and ordinances for the purposes specified, to be enforced by the appointment of officers; and that neither on general principles, nor from the effect of the enactment, was the city responsible for the destruction of property by a riotous assemblage of persons, or for the neglect of the officers in not preserving the peace and preventing the destruction of property.

In *Dunbar v. The Alcalde, &c., of San Francisco*, 1 Cal., 355, it was held that a municipal corporation is not liable for the destruction of a building, in pursuance of the direction of its officers, *where no statute exists creating such liability.* This decision was made in a case where the building of plaintiff had been blown up by the Alcalde and other officers of the city during a conflagration, for the purpose of staying its progress, and where the destruction of the building by fire was not inevitable.

In *Russell v. The Mayor, &c., of New York*, 2 Denio, 461, the statute provided, "that when any building or buildings in

the city of New York shall be on fire, it shall be lawful for
the Mayor, or, in his absence, the Recorder of the city, with
the consent and concurrence of any two of the aldermen
thereof, or for any three aldermen, to direct and order the
same or any other buildings *which they may deem* hazardous,
and likely to take fire, or to convey the fire to other buildings,
to be pulled down and destroyed." The statute also provided
for an assessment of the damages which the owners of buildings
thus destroyed should sustain, and for the payment thereof by
the city. And it was held that the city was not liable in an
action at common law for the loss of personal property
deposited in a building destroyed by virtue of an order of the
Mayor, etc., pursuant to the statute to prevent the spread of
fire, that the statute provided for compensation only to the
owners of buildings thus destroyed, and to those "having an
estate or interest" in such buildings; that the owner of per-
sonal property deposited in, and destroyed with, the build-
ings, was not within the statute, and could not, therefore,
recover. It was further held in that case, that the authority
conferred by the statute upon the officers of the city is a reg-
ulation of the right which individuals possess to destroy pri-
vate property, in cases of inevitable necessity, to prevent the
spreading of fire; that in making an order for the destruction
of a building pursuant to the statute, the officers do not act as
the agents of the corporation, but as magistrates designated
by law for the execution of a public duty, and that the cor-
poration was not responsible for their acts any further than
the statute had made them so.

In *Stone v. The Mayor of New York*, 25 Wend. 156, it was
held that the lessee of a building in the city of New York,
destroyed by fire by order of the Mayor, to prevent the spread
of a conflagration, was *not* entitled to recover damages for
merchandize in the building at the time of its destruction not
belonging to him but *the property of others*, and which was
in his possession as a factor, or merely on storage. The ground
of this decision, like that in *Russell v. The Mayor, etc., supra*,
is that there was no liability on the part of the city to make
compensation for property destroyed, except as, and to the

extent, provided by the statute; that unless the statute created a liability on the part of the city none existed.

. This is the doctrine of all the cases we have found with the single exception of *Bishop & Parsons v. The Mayor*, etc. of *Macon*, 7 Geo., 200. There the city was held liable for blowing up the building of the plaintiff. No authority is cited except *Lord v. The Mayor*, etc. *of N. Y.*, 18 Wend., 126. This case was decided both in the Supreme Court, 17 Wend., 285, and in the Court of Errors upon the ground that the statute of the State had expressly made the corporation responsible, and not upon the ground of any common law liability. The decision stands alone, and in the language of the Supreme Court of California, *Dunbar v. San Francisco*, 1 Cal., 358, " Without some provision in the charter, or some statutory enactment, imposing the liability upon the city, I do not see how that decision can be sustained."

In *Taylor v. Plymouth*, 8 Met. (Mass.,) 462, which was an action to recover against the town for a building torn down to stop a fire, CH. J. SHAW, says: "In order to charge the town, the remedy being given by statute only, the case must be clearly within the statute. Independently of the statute, the pulling down of a building in a city or compact town, in time of fire, is justified upon the great doctrine of public safety, when necessary, * * * . But if there be no necessity, then the individuals who do the act shall be responsible. This is the more reasonable, as the law has vested an authority in the proper officers to judge of that necessity. But the town is responsible by force of the statute only, and such responsibility is confined to the cases specially contemplated." In support of the same doctrine of the non-liability of the corporation in the absence of an express statute; see the following additional cases. *Weightman v. Washington*, 1 Black., (U. S.) 49; *Coffin v. The Inhabitants of Nantucket*, 5 Cush., 269; *Hafford v. City of New Bedford*, 16 Gray, 297; *Ruggles v. Nantucket*, 11 Cush., 433; *Parsons v. Pettengell*, 11 Allen, 511; *Surocco v. Geary*, 3 Cal., 69; *Brinkmeyer v. Evansville*, 29 Ind., 187. See also cases cited in notes to Section 773, of Dillon on Mun. Corp., p. 732; and see

also *Ogg v. City of Lansing*, 35 Iowa, 495, which was an action brought by the plaintiff against the city, alleging that in Nov., 1871, a man by the name of Less, was taken sick with small pox in the city; that the city authorities took said Less, and the house in which he was confined under its charge and control, but neglected to take proper and ordinary precautions to prevent the spread of the desease; that Less died, and the agents and servants of the city requested and directed the plaintiff, who was passing the house in which Less died, to assist in taking the coffin in which said deceased was deposited from the house, without giving plaintiff any notice of the disease which caused the death, and without having cleaned the house or used any means to prevent the spread of said disease; that the plaintiff did so assist in removing said corpse, and soon returned to his own house whereby the disease was communicated to two of his children who died thereof. It was held that, although the statute conferred the power upon the city to establish a board of health, who had power to make regulations in relation to communication with houses where there was any contagious or infectious disease, to establish pest houses or hospitals, and, when deemed expedient and necessary to prevent the spread of any contagious desease, to remove to the pest house or hospital any person sick with any such disease, to prohibit communication or intercourse with such houses, etc., and to employ persons to carry into effect all the rules and regulations made by the board, etc., the city was not liable for the alleged negligent conduct of the persons thus employed in the hospital. It was held to be the " true doctrine that the powers conferred upon the corporation are of a legislative and governmental nature," for a defective execution of which the city could not be made liable in a common law action.

In the case before us the statute (Rev., § 1057,) authorizes municipal corporations to " protect the property of the municipal corporation and its inhabitants." Section 1058 empowers them to make " regulations for the purpose of guarding against danger from accidents by fire." Section 1071 confers the power upon the city " to make and publish from time to

time by-laws or ordinances, not inconsistent with the law of the state," for carrying into effect the powers conferred, and makes it the duty of the corporation " to make and publish such ordinances or by-laws as shall be necessary to secure the corporation from injuries by fire," etc. And by section 1096 the corporation is authorized to establish a city watch or police, and organize the same in such manner as will most effectually secure the inhabitants from personal violence and their property from fire and unlawful depredation, to establish and organize fire companies, and provide them with proper engines and such other instruments as may be necessary to extinguish fire and preserve the inhabitants of the city from conflagrations, and to provide such by-laws and regulations for the government of the same as they shall deem expedient."

We will not stop to determine whether these statutory provisions do or do not confer authority upon the city to pass the ordinance under which plaintiff's property was destroyed, for if they do not confer such authority, the city, in its corporate capacity, could not be made liable for the unauthorized act of any of its officers. The ordinance would be void, and would confer no authority on the Mayor or other officers to do the act complained of, and the city would not be liable therefor. See *Dunbar v. San Francisco*, *supra*, and cases cited on p. 356. If, on the other hand, the ordinance is valid, and authorized the Mayor to judge of the emergency and do what, by the common law, any individual might do at his peril without a statute upon the cases cited, the city is not liable for the consequences of his acts in the absence of a statute creating such liability.

II. It is insisted by appellant's counsel that the destruction of plaintiff's buildings when there was no immediate 4.——; eminent domain. necessity to do so to arrest the progress of the fire, was a taking of private property for public use, and having been taken by appellee in pursuance of the ordinance and statutes refered to, the plaintiff is entitled to compensation from the city.

There are several satisfactory answers to this position. *First*, the power of eminent domain is vested in the State,

and can be exercised by it alone, either directly, or by the corporation or persons to whom it is delegated by the legislature, the purpose must be a public one, and specified in the act delegating the power, and the power must be strictly pursued. See cases cited in notes to sections 467, 468 and 469, of Dillon on Municipal Corporations. There is nothing in the statutes of the State conferring the power of eminent domain upon the cities of the State, except for the purpose of laying off, opening, widening, straightening, etc., streets, alleys, public grounds, wharves, landing places and market places. Revision, §§ 1064, 1065, 1066, 1067. These sections of the statute confer upon the corporations the right of eminent domain for these purposes, and make provision for compensation to the owners of property to be taken under the power. The power is not conferred for any other purpose, and consequently can only be exercised for the purposes authorized. *Second*, if it be conceded that the destruction of buildings at the discretion of the mayor or other officer of the city, when a fire is in progress, is a taking of private property for public use, then it is beyond question that the statutes and the ordinances of the city, before referred to, do not confer any authority upon the city or any of its officers, or other person, to so destroy buildings or other property, and even if the statute, in express words, professed to authorize such destruction when deemed necessary by an officer of the city, no authority to do so would be thereby conferred. The statute would be null and void because in direct conflict with section 18 of article 1 of the constitution. Any statute professing to authorize the taking of private property for public use without *first* making, or securing to be made, a just compensation therefor, would be invalid and confer no power whatever to take such property. There is no provision in the statutes of the State providing for making compensation for property destroyed in cities for the purpose of preventing the spread of fire, consequently if such destruction be an exercise of the power of eminent domain, it follows conclusively that such destruction is not authorized by the law. Not only so, but if the destruction of buildings or other property, for the purpose of preventing the

spread of fire in a city or town, under the direction of some officer of the corporation upon whom is conferred an authority to judge of the emergency, be a taking of private property for public use within the meaning of the constitutional provision before referred to, then the legislature cannot authorize such destruction, for, by the constitution, compensation is required to be *first* made, or secured, before the property can lawfully be taken, which would be utterly impracticable in cases of fire in compact cities.

*Third,* in addition to the reasons above given, the great weight of judicial authority holds that the destruction of property under authority conferred by law upon officers of municipal corporations is not an exercise of the power of eminent domain, but is a regulation of the right which individuals possess to destroy private property in cases of inevitable necessity, to prevent the spreading of fire or other great calamity. The following cases hold that, the destruction of property under such circumstances is not the exercise of the right of eminent domain: *Russell v. Mayor, etc., of N. Y., supra; The Am. Print Works v. Lawrence,* 3 Zabriskie, 595, 615; *McDonald v. City of Red Wing,* 13 Minn., 38, 41, 42; *Stone v. Mayor, etc., of N. Y.,* 25 Wend., 172, 173; Opinion of Senator VERPLANK; *Surocco v. Geary,* 3 Cal., 69, 73, 74; *Dunbar v. The Alcalde, etc., of San Francisco. supra.* The following cases, while they do not expressly decide, support the same doctrine: *Taylor v. Plymouth,* 8 Met., 462, 465; *The Mayor, etc., v. Lord,* 18 Wend., 126; *Conwell v. Emrie,* 2 Carter (Ind.), 35.

While there are to be found in the opinions of judges in some cases, expressions leading to a different view, we have found no case directly holding a doctrine different from that of the cases above cited on this point.

We find no authority, either in the adjudged cases or in legal principles, upon which to hold the municipal corporation liable for the act of the mayor in ordering the destruction of plaintiff's buildings. The judgment of the Circuit Court, in sustaining the demurrer to the plaintiff's petition, must be

AFFIRMED.