## DETROIT YOUNG MEN'S SOCIETY *vs.* MAYOR &c. OF DETROIT.

The 8th subdivision of the "Act to provide for assessing property at its true value," &c., approved Feb. 14, 1853, exempting from taxation the real estate belonging to library, benevolent, charitable and scientific institutions, actually occupied by them for the purposes for which they were incorporated, exempts from taxation only such distinct tenements as are actually occupied by such institutions for the purposes of their creation, and not tenements, though under the same roof, which are used for other purposes.

The proper mode of assessing such property, occupied by such institutions for the purposes for which they are incorporated, is to exclude it in the estimate of the value of the whole estate, and the tax levied thereon will be laid only upon the value of that which is not exempt, though the description of the property embraces the whole.

Real estate for the purpose of assessment should be "described by its boundaries, or in some other way by which it may be known." Therefore, where premises were described in an assessment and tax roll, as follows—

"Young Men's Society—Gov. & J. P.
Jeff. Av. N 45 feet—W pt lot 11 sec. 1.
          & E pt lot 10 sec. 1. } B. 2."

*Held*, that the assessment was illegal, and the tax levied on the premises invalid.

Case reserved from Wayne Circuit.

The plaintiffs were incorporated by an act of the Legislature of Michigan, approved March 26, 1836, which act is referred to and made a part of this case, to show, among other things, the purpose of the incorporation. The said Society was organized under said act, and its by-laws and standing rules, were referred to and made a part of the case. They have been for many years possessed of a library, which now amounts to nearly three thousand volumes, and have regularly, every year, from the time of its organization to the present time, had delivered before the Society a course of lectures upon scientific, literary, and general subjects, and have for the same time, and with the same regularity, sustained a course of debates upon the same subjects, which debates have been conducted by members of the Society.

The Society were, on the first day of April, 1853, the owners of a building situate in the city of Detroit, known as "The Young Men's Hall," together with the land on which it is erected. The building was erected for the use of the Society in carrying out the purposes of its incorporation and organization. The lower or first story, not being required for the uses of the Society, was finished into two stores, which, with the cellars below them, were leased by the Society for business purposes, for a given rent, as are also two small offices in the second story. The remainder of the building, being four stories in front, was used entirely for the purposes of the Society, for library rooms and for the meetings of the Society and its officers, for the purposes of business, attending lectures, debates, &c.

The assessors of the city of Detroit, for the year A. D. 1853, assessed said lot and building belonging to said Society, by the following description, viz. :

"Young Men's Society—Gov & J. P.
Jeff Av N 45 feet—W pt lot 11 sec 1. ⎫
          & E pt lot 10  "  1. ⎬ B 2. $13,000.
                                ⎭

On such assessment so made, the defendants, the Mayor, Recorder, Aldermen and freemen of the city of Detroit, levied and charged a tax for city, school, and sewer purposes, for said year A. D. 1853, to the amount of one hundred and twenty-four 79-100 dollars; and said tax not being paid on the            day of October, 1853, the collector of the 2d ward in said city, where said lot and building are situated, by a warrant issued under the authority of the defendants, and by their direction, levied and seized upon the library of said Society, for the purpose of selling the same to pay said tax so assessed as aforesaid, and which was the wrong complained of by the plaintiffs. And upon these facts it was submitted whether—1. The real estate of said Society before described, or any portion of it, is subject to taxation by law, and if so, what portion. 2. Whether the assessment upon said property as above was legal ; and 3. Whether the tax levied thereon was valid; so that the property of the Society taken for its payment was rightfully taken therefor.

*C. I. & E. C. Walker*, for plaintiffs.

The real estate described in the case submitted, is exempt from taxation, and therefore, the assessment and levy were both invalid.

It is admitted that all property is subject to taxation, unless expressly exempt by law. (*Sess. Laws* 1853, *No.* 86, § 1, *p.* 128.)

Among the property expressly exempt, is the following : "The personal property of all library, benevolent, charitable and scientific institutions incorporated within the State, *and such real estate belonging to such institutions, as shall actually be occupied by them for the purposes for which they were incorporated.*" (*Ib.* § 5, *p.* 129.)

In seeking for a proper construction to be given to this and similar exemptions in our statutes, we must, of course, have reference to the well settled rules of construction.

One cardinal rule is, that Courts must consider the policy of the statute, the object in view, the remedy intended, and give it such an interpretation as is best calculated to advance its object, and effect the design of the Legislature.

Such an interpretation is never to be adopted as will defeat its own purpose, if it will admit of any other reasonable construction.

In considering a statute which has for its end the promotion of important and beneficial *public* objects, a *large* construction is to be given when it can be done without doing actual violence to its terms. ( *Wollcott* vs. *Pond*, 19 *Conn.* 597.)

Now, the obvious intention of the Legislature, by the liberal provisions of the Statute, was to exempt from taxation property devoted to intellectual, moral, and religious improvement, and to that extent to encourage and protect these highest interests of society, and to throw the burdens of taxation on property held for purposes of pleasure or self-interest.

To effectuate this intent, a large and liberal construction should be given to the terms used by the Legislature.

But no such large or liberal construction is required, to exempt from taxation the property in question.

1. The Young Men's Society is a *scientific* institution.

It was organized " for purposes of moral and intellectual improvement." See Act of Incorporation.

2. There can be no doubt that both within the letter and the spirit of the statute, the Young Men's Society is a " Library Institution."

It was incorporated for the purposes of moral and intellectual improvement, and is expressly authorized " to establish and superintend a Library." 

The standing by-laws, made long before they had any real

estate, provide for a standing committee on Library. (*Art. 6, by-laws.*)

The duties and responsibilities of a librarian are pointed out, the government of the library provided for. (*Art. 9 and 10, by-laws.*)

In 1849, the Legislature authorized the Society to loan on bond a sum not exceeding ten thousand dollars, to be appropriated to the purpose of erecting a building for the use of the Society, or *of adding to its library*, and to no other purpose whatsoever." (*Sess. Laws* 1849, *Act No.* 97, *p.* 98.)

The case shows that they have had a library for many years, and that it now amounts to nearly 3,000 volumes.

We think that these references to the act of incorporation, showing the original purpose of the Society; to the by-laws of the Society, and the actual establishment of a library, showing that the original purpose has been carried out; the recognition of its being a library institution by the Legislature in the act of 1849, fully establish the position that within the letter, as well as the spirit of the statute, this Society is a " library institution."

If we have succeeded in establishing either of these propositions, then the real estate of the Society is exempt from taxation, *if used for the purposes for which it is incorporated.*

The property in question is the Young Men's Hall, and the land on which it stands. The case finds that the building was erected *for the use of the Society*, in carrying out the purposes of its organization. The lower story not being at present required for the uses of the Society, is rented, as also are two small offices in the second story. The remainder of the building is used entirely for the purposes of the Society.

It is very clear, therefore, that the real estate assessed, is real estate *belonging to the Society, and actually occupied by them for the purposes for which they were incorporated, and as such is exempt from taxation.* If so, the assessment is wholly invalid, and also the tax levied upon it. (*Mc-*

*Quilkin* vs. *Doe,* 8 *Blackf.* 581 ; *U. S. Dig.,* 1849, 411 ; *Lackey* vs. *Mercer County,* 9 *Barr.* 318.)

If it be said that the *whole* of the property is not actually occupied by the Society, and is not therefore exempt from taxation ; for the purposes of this suit it is sufficient to say, that a portion of it, at least, is exempt, while the *whole* is taxed ; and where a portion of an assessment is invalid, the whole is invalid. (2 *Sup. Dig.* 832, § 235; *Jones* vs. *Gibson,* 2 *Tayl.* 41; *Libby* vs. *Burnham,* 15 *Mass.* 147.)

The building was erected for the Society's use, and most of it is occupied by them. For the time being, some of the rooms are rented. This is an incidental matter, and should not affect the exemption of the whole property.

Nor does our statute contemplate that rooms in a building shall be separately assessed. It provides for the manner of describing real estate in the assessment, and this provision must be strictly complied with, or the assessment is invalid. That provision in relation to city property is as follows:

"In case of lands surveyed or laid out as a town or village, and a plat thereof recorded in the register's office of the county, if the tract to be assessed be a whole lot or block, it shall be described by a designation of the numbers thereof; if it be part of a lot or block, it shall be described by its boundaries, or in some other way by which it may be known, and it shall not be necessary to insert the quantity of such lands on the assessment roll." (*Session Laws* 1853, *No.* 86, *p.* 135, § 23. See *Dike* vs. *Lewis,* 2 *Barb. S. C. R.* 345.)

The portion of the property of the Society which is rented, could not be described under this provision, without describing property which is exempt, and the Legislature have never contemplated or provided for assessing property in the manner required to assess the *rented* property of the Society, leaving that used by the Society unassessed.

As a necessary result, therefore, none of the property of the Society is liable to taxation.

Another objection to the present assessment is its uncertainty. Parts of two lots are assessed. No boundaries are given, nor any other description by which the property may be known, or its limits ascertained, as the statute requires.

And even in the absence of any express statute, the description of property assessed must be so certain that its locality and boundaries may be ascertained. ( *U. S. Dig.*, 1850, 405 ; *Olcott* vs. *The State*, 5 *Gilm.* 481 ; 2 *Sup. Dig.* 836; *Perkins* vs. *Dibble*, 10 *Ohio*, 433; *Raymond* vs. *Longworth*, 4 *McLean*, 481.)

*J. B. Witherell*, for defendants.

1. All the real estate within this State is subject to taxation, unless expressly exempted. (*Sess. Laws* 1853, *p.* 128, § 1.)

2. Such real estate belonging to library and scientific institutions, as shall be actually occupied by them for the purposes of their incorporation, (and no other,) is exempt from taxation. (*Sess. Laws* 1853, *p.* 129, § 5, *subd.* 8.)

3. Such occupation must be exclusive. An occupation partially for the purposes for which it was incorporated, and partially for other purposes, is not such a use of its real estate by a library or scientific institution, as will exempt it from taxation. ( *Cincinnati College* vs. *The State*, 19 *Ohio*, 110 ; *Purviss* et al. vs. *Traill Exch.*, 3 *Wels.*, *Hurls. & G.* 344 ; *Clarendon*, *app.*, vs. *St. James*, *resp.*, *Eng. Com. Law*, 70, 817, 818, 819.)

4. Such occupation must be direct. If the real estate of a library society is leased to others, such real estate will not be exempt from taxation, although the whole of the rent be expended for the purposes for which the Society was incorporated.

The lessee has an estate in the property, which must be taxed. (*Cin. Col.* vs. *The State*, 19 *Ohio*, 110 ; *Proprietors S. Cong. Meeting House of Lowell* vs. *The City of Lowell*, 1

*Metc.* 538; *Pierce* vs. *Inhabitants of Cambridge,* 2 *Cush.* 611;. *Clarendon, app., St. James, resp.,* 70 *Eng. Com. Law,* 817,. 818, 819, 820; *Purviss* vs. *Traill,* 3 *Exch.,* 344; *Green* vs.. *Sterry* et al., 12 *A. & E.* 84.)

5. If the real estate of a society, occupied exclusively and directly for the purposes for which it was incorporated, is so situated with reference to other real estate of the Society, not so occupied, that they cannot be separately described by the assessors, and the description of the one must necessarily include the description of the other, then the society, by so disposing its property, has voluntarily deprived itself of the benefit of the exemption.

All the laws exempting any of the property in the State from taxation, being in derogation of equal rights, should be construed strictly. (*Cin. Col.* vs. *The State,* 19 *Ohio,* 110.),

6. The tax laws of this State regard all real estate as land, and require it to be described as such by its boundaries, or its designation on plats and maps; so that the assessors can only describe a building, or any portion thereof, as the land upon which it stands, and the descriptions of the first story, of the second story, and of the ground which they cover, are identical. (*Sess. Laws* 1853, § 23, *p.* 135, *&c.*)

7. The library rooms and lecture hall of the Young Men's Society are upper rooms, and the only portion of its real estate which is claimed to be directly and exclusively occupied by it, for the purposes for which it was incorporated; and if this claim is well founded, it is the only portion of its real estate which would be exempt from taxation, if it stood by itself upon land occupied in no other way.

The cellars, the first story, and the offices of its building, are not occupied exclusively and directly by the Society for the purposes of its incorporation, but are rented to others, who thus acquire a taxable estate in the property; so that this portion of the Society's real estate would not be entitled to exemption from taxation if it stood by itself on land not oc-

cupied in any other way, for two reasons: 1st, because it is not occupied in the manner contemplated in the statute which exempts; and, secondly, because the lessees have a direct and taxable interest in the property.

8. The portion of the building belonging to the Young Men's Society which is claimed to be used exclusively and directly for the purposes of its incorporation, is under the same roof and covers the same land as the portion not so used. This last mentioned portion, (the taxable portion,) was described correctly by the assessors as the land under it, the only mode of description which the tax law admits of; and if that description necessarily includes the other portion, it is by the act of the Society, which has thus voluntarily disposed its property so as to render it impossible to exempt a portion which might otherwise be properly exempted, without at the same time exempting the remainder, which the law never intended to exempt.

By the Court, Green, P. J.

By the eighth subdivision of section five of " An act to provide for assessing property at its true value, and for levying and collecting taxes thereon," approved Feb. 14, 1853, " the personal property of all library, benevolent, charitable and scientific institutions, incorporated within this State, and such real estate belonging to such institutions as shall be actually occupied by them, for the purposes for which they were incorporated," are exempted from taxation.

The plaintiffs were incorporated by an act of the Legislature, approved March 26, 1836, " for the purposes of moral and intellectual improvement." In order to promote the purposes of their incorporation, they have furnished themselves with a Library, now embracing nearly three thousand volumes, and have regularly, every year from the time of their organization, had delivered before the Society a course of lectures upon scientific, literary and general subjects, and

have for the same time regularly sustained a course of debates upon the same subjects, conducted by members of the Society. It is not questioned that the plaintiffs are an institution coming within the purview of the clause of the statute above recited, and entitled to the exemption therein provided for. But it is insisted on the part of the defendants that the real estate upon which the tax in question was imposed, was not actually occupied by the plaintiffs for the purposes for which they were incorporated.

It is not claimed by the plaintiffs that they occupied the real estate taxed *exclusively*, but that having erected a building covering the whole part of their lot on Jefferson Avenue, and using the rooms above the first floor, they do occupy the whole area, so that no portion of the lot can be taxed without including a portion of that which is actually occupied by them, and that therefore the whole is exempt.

If this assumption be correct, they might erect a building six stories high, and rent all but the uppermost one, and if that were actually occupied by them for the purposes of their institution, the whole would be exempt from taxation. But, practically, it is not correct to say that no portion of the property could be taxed, without embracing that which the plaintiffs actually occupied, although no provision is expressly made for assessing separate rooms or tenements of a building. The Revised Statutes of 1838, p. 76, exempted from taxation " all improvements of the value of one hundred dollars and under, on lands actually used and occupied for farming purposes, and all buildings thereon, of the value of one hundred dollars and under." No special provision was made for giving the proprietors of lands the benefit of this exemption, nor was it ever supposed that because no special provision was made for assessing the land separate from the buildings and improvements thereon, the land itself was covered by the exemption. The mode adopted to give the benefit of the exemption to those entitled

to it, was for the assessors to estimate the value of the land as though it were unimproved, or without buildings. This satisfied the statute by carrying into effect the just intentions of the Legislature. Buildings, to be sure, were real estate, and embraced strictly within the description of the land on which they stood; but yet the owner paid no tax on account of such as were exempted.

By the same process, it is readily perceived, the plaintiffs may have the full benefit of the exemption provided by the statute. The portion of the building occupied by them for the purposes for which they were incorporated, may be excluded in the estimation of the value of their real estate by the assessor, and the tax levied thereon will be laid only upon the value of that which is not exempt, though the description of the property will embrace the whole. This is probably the only practicable mode which can be adopted under our present statutes to effect the object proposed, unless, as it is claimed by the plaintiffs, the whole property in question is excluded from assessment.

The latter, as we have seen, would involve an unreasonable construction of the law, which, it is apprehended, cannot be sustained by any well considered precedent. Exemption laws of this character, though beneficent in their objects, are in derogation of equal rights, and must be construed strictly. (*Cincinnati College* vs. *The State*, 19 *Ohio*, 110.) The first section of the statute, under which the plaintiffs claim exemption, declares that "all property real and personal within this State, not *expressly* exempted therefrom, shall be subject to taxation in the manner provided by law." Nothing can be holden to be exempt by implication. Did the plaintiffs actually occupy the *whole* of the property taxed? Clearly not. It follows, therefore, that it is not *all* exempt, for there is a portion of it that is not *expressly* exempted. The consequence which would seem necessarily to follow, unless the portion occupied by the plaintiffs can in

some way be separated from that which is occupied by others, is that the whole would be subject to taxation. And this consequence would result from the act of the plaintiffs themselves, waiving the privilege which the law has tendered to them.

The occupation contemplated by the statute must be exclusive. This was held in Purviss *vs.* Traill, (3 *Exch. R.* 344,) under 6 & 7 Vic., c. 35, sec. 1, which is substantially like ours, and does not contain the word *solely*, or *exclusively.* In that case, the lecture hall and other rooms occupied for the purposes of the institution were occasionally rented for other purposes, and they were held to be subject to taxation for that reason.

By the fifth subdivision of Sec. 5, chap. 7 of the R. S. of Massachusetts, " all houses of religious worship and the pews and furniture within the same, (except for parochial purposes,)" were exempted from taxation. (*R. S. of Mass, p.* 76.) The 3d section of the same chapter provided that real estate should, for the purposes of taxation, be construed to include all lands within the State, and all buildings and other things erected on or affixed to the same. Six stores, under the vestry and rooms used for religious worship, belonging to the proprietors of the South Congregational Meeting House in Lowell, were assessed for taxes for the year 1838, which were paid under protest, and suit was brought to recover back the money so paid. (*Proprietors, &c.* vs. *City of Lowell,* 1 *Metc.* 538.) The Court in that case say that the exemption extended only to that part of the property which was used as a place of worship, and for purposes connected with it, such as the vestry, the furnace and the like, and did not include distinct tenements used for other purposes, though under the same roof. The statute of Massachusetts did not prescribe the particular mode in which real estate should be described in the assessment rolls, and it seems to have been regarded as proper to assess separate rooms or tenements in the same

building, and they were held to be as essentially distinct when one was over the other, as when one was by the side of the other. (4 *Mass. R.* 675.) By statute of 1841, chap. 127, this mode of assessing tenements was expressly provided for. In this State, that mode of assessing has not, so far as we are advised, ever been attempted.

The property of the plaintiffs, consisting of parts of two city lots, should have been "described by its boundaries, or in some other way by which it may be known." (*Subd.* 4 *of* § 23, *Laws of* 1853, *p.* 135.) It was described in the assessment and tax rolls as 45 feet on Jefferson Avenue, "w pt lot 11, sec. 1, and E pt lot 10, sec 1," &c., without designating the number of feet on each of said lots. By such a description, the property cannot be known. No person could fix its boundaries or determine its locality. It is entirely uncertain, and the assessment of the tax is therefore void.

It must be certified to the Circuit Court for the County of Wayne as the opinion of this Court,—

1. That the real estate of the plaintiffs, known as "Young Men's Hall," together with the land on which it is erected, is liable by law to taxation, subject to a deduction of the value of the tenements actually used and occupied by them for the purposes for which they were incorporated, from the entire value of the lot and building.

2. That the assessment of said property for the year 1853 is illegal, for want of a proper and sufficient description of the lot assessed; and

3. That the tax levied thereon for the said year 1853, for the reason aforesaid, is invalid, and the property of the plaintiffs could not therefore rightly be taken for the payment of such tax.