SISTERS OF CHARITY *v.* CITY OF DETROIT.

## The Sisters of Charity of Detroit v. The City of Detroit.

The statutes exempt from taxation "such real estate belonging to" library, benevo-
lent, charitable and scientific institutions, "as shall actually be occupied by
them for the purposes for which they were incorporated." Certain real estate
was deeded to a church, in fee, "to the end that they might, from time to
time, as they should deem necessary, erect thereupon any buildings or im-.
provements, suitable for ecclesiastical, literary or benevolent purposes," and was
leased to the Sisters of Charity for thirty years, at a nominal rent, for chari-
table purposes, and was actually occupied for such purposes. Whether the pre-.
mises, while held and occupied under this lease, are exempt from taxation un-
der the statute as "real 'estate belonging" to the Sisters of Charity," *quere*;—
the Court being equally divided on the question.

*Heard October 12th. Decided November 14th.*

Appeal from the Wayne Circuit in Chancery.

The complainants, who are incorporated under the gene-
ral law of 1855 for the incorporation of charitable societies,
for the purpose, as set forth in their articles, of assisting
persons, and particularly children and orphans suffering
from disease, necessity or infirmity, and to that end of
establishing and maintaining hospitals and asylums for their
reception, support, care and relief, and schools for the
education of poor and destitute children, filed their bill of
complaint setting forth that, for the purposes of their organiza-
tion and for no other purpose, they procured a lease for
thirty years from the first day of January, 1859, of cer-
tain premises in Detroit, from Peter Paul LeFevre, Bishop
of Detroit, "for the purpose of keeping and maintaining
thereon, during said term, an orphan asylum and gratuitous
school or schools for poor and destitute children," and by
the terms of their lease the use of the premises is restricted
to such purposes. The title to these premises is as fol-
lows: The Governor and Judges of Michigan conveyed
the same to the Catholic Apostolic and Roman Church of
St. Ann of Detroit, a body corporate, February 25, 1834,
to the end that they might, from time to time, as they
should deem necessary, erect thereupon any buildings or

improvements suitable for ecclesiastical, literary or benevolent purposes; and the grant limited the use of the premises to these objects and purposes. May 1, 1834, the church of St. Ann leased the premises to Frederick Rese, Bishop of Detroit, and his successors in office, for the term of 999 years, to the end that he might, from time to time as he deemed necessary, erect thereupon any buildings or improvements, suitable for ecclesiastical, literary or benevolent purposes. No rent was reserved upon this lease, and the use of the premises was limited to the purposes and uses specified in it.

The lease to complainants from LeFevre, who was successor in office of Rese, as Bishop of Detroit, reserved a nominal rent of one dollar for the entire period of thirty years, and by the terms thereof, complainants were to pay all taxes and assessments legally imposed upon the premises during the term. The premises are now actually occupied by complainants for the purposes for which they were incorporated.

The city of Detroit imposed a tax on these premises for the year 1859, of $285.34, for city, school and sewer purposes, and have issued a warrant to Charles O'Neil, tax collector, for its collection. And complainants, claiming that the property is exempt from taxation, pray a perpetual injunction against the collection of this tax.

The defendants demurred to the bill, and the court below awarded a perpetual injunction as prayed. Defendants appealed.

*W. Gray* and *T. Romeyn*, for complainants.

*W. J. Speed* and *A. Russell*, for defendants.

MARTIN CH. J.:

Were the property which is the subject of this assessment actually occupied by the corporation of St. Ann's

church, as it is now occupied by these complainants, it would, I think, be most clearly exempt from taxation. It was conveyed by the Governor and Judges of the territory of Michigan to such corporation, to the end, as the bill alleges, that they might from time to time, as they should deem necessary, erect thereupon any buildings or improvements suitable for ecclesiastical, literary or benevolent purposes; and we find it occupied by these complainants for the purpose of keeping and maintaining an orphan asylum and gratuitous school for poor and destitute children. But the corporation of St. Ann's having leased it, without rent, to the Bishop of Detroit, and his successors, for the term of nine hundred and ninety-nine years, limiting its use to the objects of the grant, and the Bishop of Detroit having leased it for the nominal rent of one dollar, to the complainants, for the special benevolent purpose for which they occupy it, for the period of thirty years, requiring them to pay all taxes which may be lawfully assessed against it, it is claimed to be subject to taxation. This claim is founded upon subdivision 8 of § 786 of the Compiled Laws, which provides that "the personal property of all library, benevolent, charitable and scientific institutions incorporated within this State, and such *real estate* belonging to such institutions as shall actually be occupied by them for the purposes for which they were incorporated" shall be exempt from taxation. By subdivision 9 of § 3 of Compiled Laws (p. 88), it is enacted that the word land, or lands, and the words *real estate* "shall be construed to include land, tenements and real estate, and all rights thereto and *interests therein;*" and this is one of the several rules prescribed by the Legislature for the construction of statutes—(*Comp. L.* § 788). Now this tax was required by law to be assessed against these complainants as occupants; and the bill alleges that the defendant O'Neil threatens to make the money from their personal property, which is primarily liable for its payment—

not until no personal property could be found, or that found proved insufficient, could the land be sold. It is true that the land being the subject of taxation, a lien existed upon it for the amount of the taxes, and it became liable to sale upon their default to make payment. Should such sale be made, their leasehold estate would be destroyed if the land were purchased by a stranger. It does not alter the case that the land is, itself, sold in such case, and not the term of the lessee; for the jeopardy to the landlord makes that of the tenant no less, but far greater; and the term is involved in the sale, for it is a condemnation of all titles and interests. The statute must not be read without a recognition of the fact that the land having an owner of the fee, may be possessed by one having ing an interest less than the fee, which is denominated "real estate." The "real estate" is exempted; and this exemption, although attached to the land, is a personal privilege; for we can not conceive of exemption except as a personal benefit, or a subject of exemption without ownership. Such personal privilege may be upon an estate less than the fee; for the statute does not limit it to the greater estate, but extends it to such as belongs to such incorporations as are designed to be protected by it, and occupied for the purposes of the incorporation. The benefit is not bestowed upon the land, but upon persons; the land, or *real estate* therein, being the subject, the person the object.

The tax was therefore assessed upon the "real estate" of these complainants.

But were it assessed against the land, and not against an owner or occupant, I think it would still be exempt under the circumstances of this case, and a true construction of the statute.

In giving a construction to a statute, it is the duty of a court to consider its policy, and to give it such an interpretion as may appear best calculated to advance its

object, thereby effectuating the design of the Legislature: *Allen v. Parish*, 3 *Ohio* 198—and this even though such construction may seem contrary to its letter : — 3 *Cow.* 89. Now the policy of this exemption act is too evident to require discussion. It was to relieve these incorporations from the burthen of taxation upon property used for the purposes of their organization, but not such as might be occupied for other purposes, or made the source of revenue ; and such is the principle of the case of *The Young Men's Society v. Detroit*, 3 *Mich* 172. The essential idea or requirement is, that the property shall be actually occupied for some one of the purposes the statute was designed to foster and protect. The words " belonging to " do not necessarily and imperiously imply ownership, unless upon the severest technical construction ; for property belongs to its possessor so long as he has the exclusive right to its possession. The words " by them " are not, nor were they intended to be, the emphatic words which should limit and restrict the beneficial operation of the statute ; for the design was to exempt such property as should be actually occupied for the purposes designed to be fostered. I am not required to say that property leased to a benevolent society for the use for which it was incorporated is, in all cases, exempt, although I believe it is so, so far as protection to the society is involved ; but I have no doubt that such is the case where property is dedicated by government to a charitable or benevolent use, as in the present case, and the lessees are restricted to use it according to the purposes of such dedication. Houses of religious worship are exempt from taxation: were the same language employed in exempting them as is used in this subdivision of §786, and a religious society should gratuitously lease its building to another religious society to be used for the purpose of worship, I doubt whether any one would hold that thereby the property became subject to taxation.

A statute is not to be construed according to technical

rules unless such be the apparent meaning of the Legislature; and many cases not expressly named may be comprehended within the equity of a statute, the letter of which may be enlarged or restricted according to the true intent of the makers of the law: — See *Whitney v. Whitney*, 14 *Mass.* 88; *Holbrook v. Holbrook*, 1 *Pick.* 248; *Somerset v. Dighton*, 12 *Mass.* 382; 3 *Mass.* 17, 21, 296, *and* 523; 8 *Mass.* 418, 423; 6 *Mass.* 380; 7 *Mass.* 558; 15 *Mass.* 205; 1 *Mo.* 147; 2 *Har. & J.* 167; 2 *Pet.* 662; 15 *Johns.* 358; 1 *Pet.* 64; 18 *Wend.* 126; 2 *Pick.* 29; 5 *Pick.* 449. Now had the corporation of St. Ann's Church actually or by its servants and employees occupied this property, for the purpose of keeping and maintaining thereon an orphan asylum and gratuitous school for poor and destitute children, it would be exempt, and no humane man would desire that it should be the subject of taxation. How is the case changed by the fact that the Sisters of Charity occupy it for such benevolent purposes, the property having been from the first dedicated to such or the like uses? The whole object of the grant, and the whole subject of the exemption, is contained in their enterprise. Had the church employed them as servants or agents to conduct this benevolent enterprise, the property would not have been assessable; and can it be held, upon any equitable or legal principle, that because a gratuitous lease was given by the church, instead of gratuitous service offered by the Sisters, the benefit of the exemption is taken from the property? It is true that the complainants are required, by the terms of the lease, to pay all taxes and assessments legally imposed upon the premises; but this precautionary provision in the lease does not change the law, nor impose liability where exemption existed before. If we hold the property subject to taxation under the facts of this case, we insist upon the severest construction of language, in opposition, as I think, to the true meaning of the letter, and to the equity and spirit of the law.

I think the decree should be affirmed.

MANNING J. concurred.

CAMPBELL J. :

The bill in this case is filed by the complainants to pre-vent the collection of taxes upon real estate occupied by them in Detroit, on the ground that it is exempt from taxation under section 786, vol. 1 Compiled Laws, which exempts "the personal property of all library, benevolent, charitable and scientific institutions, incorporated within this state, and *such real estate belonging to such institutions as shall actually be occupied by them for the purposes for which they were incorporated.*"

The bill states, in substance, that the title is in St. Ann's church, ·to which it was granted to the end that they might, from time to time as they should deem neces-sary, erect thereupon any buildings or improvements suita-ble for ecclesiastical, literary or benevolent purposes. That in 1834, St. Ann's church leased the premises in question to Frederick Rese, Bishop of Detroit, and his successors in office for 999 years, without rent, for similar purposes. That Peter Paul Lefevre, who is alleged to be the successor in office of Bishop Rese, leased the premises to complainants for thirty years next ensuing January 1, 1859, for the nomi-nal rent of one dollar, and on condition that the lessees should pay all taxes and assessments legally imposed upon said premises during said lease. The lease is alleged to have been made for the purpose of keeping and maintaining on the premises, during the term, an orphan asylum and gratuitous school for poor and destitute children, and the bill alleges the premises to have been occupied for those purposes. The city has levied the ordinary tax upon the premises.

The case has been argued assuming the validity of the lease and other requisites of title and corporate character,

and the only question presented is whether property so held is exempt.

A society incorporated under the laws of this state for the purposes set forth in the bill is, I think, within the meaning of the statute, a benevolent or charitable institution. And I shall only consider therefore whether the property taxed comes within the exemption. By the terms of the law all property *not expressly exempted therefrom* is subject to taxation. And any exemption claimed must come plainly within the meaning of the statute.

It is certainly not designed by this law to exempt from taxation all real estate owned by the benevolent or other institution referred to, whether the proceeds of the property or the property itself may or may not be used for the benevolent or literary purposes mentioned.

Every corporation misapplying any of its funds, or diverting them to uses not contemplated in its charter, is guilty of a violation of law. It is always to be presumed that all the corporate funds will be applied to proper corporate uses. Had the Legislature designed to exempt all property the proceeds or income of which should be thus applied, or all property to whomsoever belonging actually used for benevolent purposes, such exemption would probably have been competent. But they saw fit to limit the exemption of real estate to such as shall actually belong to, and at the same time be actually occupied by the institution, for the purposes for which it was incorporated. The occupation here referred to is not constructive, but actual; and must be by the institution, and for its corporate purposes.

The language is so plain that no explanation can make it plainer. The statute was construed in the case of *The Detroit Young Men's Society v. City of Detroit*, 3 *Mich.* 172. Similar statutes have been construed repeatedly in England as well as in this country; — *Purviss v. Traill*, 3 *Exch.* 344; *Clarendon v. St. James*, 10 *C. B.* 806; *Regina v. Missionary Society*, 10 *Q. B.* 884; *Cincinnati College v. The State*, 19 *Ohio* 110.

As the premises in question are occupied by complain-
ants, any exemption must depend on their ownership within
the meaning of the statute. The only ownership claimed
is a thirty years' lease. And we are required to deter-
mine whether this leasehold interest entitles the property
to be regarded as belonging to complainants.

If a leasehold were taxable as real estate under the
statute, apart from the fee, then the phrase might fairly
apply. But our tax laws do not contemplate or permit
any such separation.

Not only does the statute declare that real estate shall,
for the purpose of taxation, be construed to include all
lands within the state, and all buildings and fixtures thereon,
except in cases otherwise expressly provided by law, — *Comp.*
*L.* § 783, but in assessing it the statute requires it to be
described either as a government subdivision, a lot or block
on some plat, or by its boundaries (§ 804). The taxes asses-
sed are a lien upon the real estate (§ 820). When taxes
are returned, payment may be made on any *parcel of lands*
returned, or any undivided share thereof (§ 851). The
land itself is sold, and if less than the whole parcel is bid
off, it is to be a specific portion from the north side (§866).
The deed is to be a deed *of the land therein described,*
and is evidence, prima facie, *of title 'in the purchaser* (§871).
No one ever imagined that a tax sale could be made of a
mere leasehold, or that it could be taxed as real estate.
This tax is on the land, and includes the whole estate. It
is very clear that this does not belong to the complainants.
And the statute can not be made, by any construction, to
exempt what does not belong to them, and furnishes no
means of reaching any such case. The fact that the lessees
pay but a nominal rent beyond taxes can make no difference,
for the statute does not exempt property on any such ground,
and the case of complainants would be the same if they
paid rent.

The policy of embracing such cases is not for the courts

to determine. Till the statute provide for them we must apply the law as we find it.

I think the injunction should not have been granted, and that the decree should be reversed, and the bill dismissed.

CHRISTIANCY J. concurred.

The court being thus equally divided, the decree of the court below was affirmed.