THE DETROIT HOME & DAY SCHOOL v. THE CITY OF DETROIT AND SIMON C. KARRER, RECEIVER OF TAXES.

*Taxation—Institutions of learning—Exemption.*

1. A corporation organized "to establish, maintain, and conduct a seminary of learning," under chapter 138, How. Stat., providing for the incorporation of institutions of learning, the *actual* business of which has been the maintenance of *such* a seminary, with the usual studies pursued in such institutions, is *not* taxable for its realty occupied by its school buildings, the same being exempt under the second subdivision of section 3 of Act No. 301, Laws of 1887.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—Unless the term "scientific institutions" includes educational corporations, there is no statute exempting from taxation any schools, unless those in the hands of the public authorities, and those are only exempt by implication; and, if it does not include the seminaries of learning, there is practically nothing exempted, for there are no other scientific institutions, properly so called.

*b*—It is matter of common knowledge that *all* general educational establishments have universally been known as scientific institutions, and fall naturally and directly within it.

*c*—A "scientific institution," under the language of all civilized countries, means an institution for the advancement or promotion of knowledge, which is the English rendering for "science."

*d*—The ordinance of 1787 declares that "religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and means of education shall forever be encouraged;" and exemption from taxation is the only form of encouragement that our laws provide.

*e*—The Legislature, by confining this exemption from taxation to corporations, have, by the incorporating acts, thrown such safeguards as they deemed necessary around the management of the business, so as to prevent its being abused into a scheme for money getting, and, if any corporation misuses its funds, the remedy is not by the action of assessing officers, who have no authority to punish it by taking away its exemption, but by *direct* proceedings to restrain and punish any corporate abuses.

*f*—The language of the Legislature in *exempting* from taxation is as much entitled to obedience as that *imposing* taxation.

Appeal from Wayne. (Hosmer, J.) Argued April 18, 1889. Decided October 18, 1889.

Bill filed to enjoin defendants from advertising or selling real estate of complainant to pay taxes, etc. Complainant appeals from decree dismissing bill. Reversed, and relief granted as prayed for. The facts, and points of counsel passed upon by the Court, are stated in the opinion.

*Alfred Russell*, for complainant.

*John W. McGrath*, for defendants.

CAMPBELL, J.  The only question in this case is whether the corporation complainant is taxable for its realty in the city of Detroit, in reference to the tax law, which provides for exemption from taxation of the personal property of—

"Library, benevolent, charitable, and scientific institutions incorporated under the laws of this State, and such real estate as shall be occupied by them for the purposes for which they were incorporated."  Laws of 1887, p. 415, § 3, subd. 2.

This corporation was organized under an act to provide for the incorporation of institutions of learning, approved February 9, 1855 (How. Stat. Chap. 138), and subsequently amended in some particulars.  The only corporate purpose named in its charter is "to establish, maintain, and conduct a seminary of learning" in Detroit.  Its only actual business has been the maintenance of such a seminary, with the usual studies pursued in such institutions, and its real estate is all occupied by the school buildings.  Its expenses are met by tuition charges, and those have been exclusively used for its maintenance, except that one year, in 1886, a dividend of 3 per cent. was paid to the stockholders.

Unless the term "scientific institutions" includes educational corporations, there is no statute exempting from taxation any schools, unless those in the hands of the public authorities, and those are only exempt by implication.  And if it does not include the seminaries of learning, there is practically nothing exempted, for there are no other scientific institutions, properly so called.  But it is matter of common knowledge that all general educational establishments have universally been known as "scientific institutions," and fall naturally and directly within it.  A "scientific institution," under the language of all civilized countries, means an institution for the advancement or promotion of knowledge, which is the English rendering of "science."  We need not, in our history, go beyond the ordinance of 1787, which declares that—

"Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

Exemption from taxation is the only form of encouragement that our laws provide. That they have always provided, and they have not required tuition to be free, even in our public institutions, most, if not all, of which, except in favored circumstances, derive considerable revenue from pupils. The advantage of multiplying the facilities of learning has been rightly regarded as worth to any decent community very much more than can be counted in money.

The only condition imposed on the exemption is that the land exempted shall be "occupied for the purposes for which they were incorporated." That condition is fulfilled in this case, and, under repeated decisions of this Court, the line is very easily drawn. *Young Men's Society v. Detroit,* 3 Mich. 172; *Sisters of Charity v. Detroit,* 9 Id. 94. It is worthy of remark that, after the Court equally divided in the last case upon the question whether property held by one corporation under lease from another could be regarded as belonging to the lessee, the statute was amended to its present form by making an exemption of the whole estate actually occupied for the purposes declared in the law, although the owners of the fee might collect rent.

The laws for the incorporation of libraries, all, so far as the statute books show, contemplate associations for the benefit of the stockholders alone; and while dividends are not usually, if at all, allowed directly on the stock, the funds all go to the augmentation of the private property of the shareholders. Yet there is no exception to library exemptions.

In all of these cases, the Legislature, by confining the exemption to corporations, have, by the incorporating acts, thrown such safeguards as they deemed necessary around the management of the business, so as to prevent its being

abused into a mere scheme for money getting. If any corporation misuses its funds, the remedy is not by the action of assessing officers, who have no authority to punish it by taking away its exemption, but by direct proceedings to restrain and punish any corporate abuses. If it is true that the dividend made was not lawfully made, the recipients can be made to refund it, and any one legally at fault can be made responsible according to law. But the assessment of taxes on exempt property is not a legal remedy.

Where language is so plain as to convey a clear and intelligible meaning, we have no right to go beyond it, and impose another meaning. The language of the Legislature in exempting from taxation is as much entitled to obedience as that imposing taxation. This law has been in force for a very long time, and has never been amended, except to enlarge the scope of the exemption. Its purpose, as expressed, does not appear ambiguous, and in the continued application of it has not impressed any Legislature as too liberal. When it is so regarded, it will have to be changed in form to narrow it.

The taxation was in violation of the exemption in the statute, and the court below erred in sustaining it, and the decree should be reversed, and relief granted, with costs of both courts.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred with CAMPBELL, J.

MORSE, J., (*dissenting*). The complainant files its bill in the circuit court for the county of Wayne, in chancery, praying that certain real estate held by it in the city of Detroit may be declared exempt from taxation, and that the defendants may be enjoined by preliminary, and also perpetual, injunction from advertising or selling said real estate for taxes levied upon the same in 1888, or from attempting in any way to collect the same.

The bill alleges that the complainant is a scientific association incorporated under an act of the Legislature of this State, entitled—

"An act to provide for the incorporation of institutions of learning,"—

Approved February 9, 1855, and being section 4375 of Howell's Statutes. The course of studies and discipline in the complainant's institution is such as is usual in academies, and comprises the seven sciences,—grammar, logic, rhetoric, arithmetic, geometry, music, and astronomy. The complainant is subject to the visitation and examination of the Superintendent of Public Instruction, and a board of visitors appointed by him.

The complainant is the owner in fee of certain real estate in the city of Detroit, with school buildings thereon, and occupies the same for the purposes for which it was incorporated.

It is further averred that—

" By Act No. 301 of the Session Laws of this State of 1887, said real estate is exempt from taxation. Said law is a re-enactment of the laws of 1871, 1857, 1846, 1835, and 1827, in that regard."

The bill alleges that the practical construction of said law in this State, during its entire existence, has been that it includes institutions like this of complainant; and this institution has been exempted by the board of assessors, and by the common council of Detroit, from payment of taxes upon said real estate for every year since the complainant owned and occupied the same up to the year 1888. The complainant shows, upon information and belief, that other like institutions in the State have always uniformly been held exempt from taxation, as respects their real and personal property, to wit: The Seventh Day Baptist School at Battle Creek, The Michigan Female College at Kalamazoo, The German American Seminary at Detroit, The Detroit Female

Seminary, Olivet College, Albion College, and Kalamazoo College.

It avers that its real estate has been assessed for the year 1888 as the property and in the name of D. Whitney, Jr., who has no interest whatever in said real estate.  The complainant duly protested against such assessment, and appealed to the common council of the city of Detroit, stating that it was exempt by its ownership and occupancy for said purpose for which complainant was incorporated.  The common council confirmed said assessment, and rejected said appeal.

Thereupon said real estate has been ratably taxed, upon the tax roll, for the various taxes in the sum total of $406.07; and the defendant Karrer, receiver of taxes, has duly published the same for payment.  The first day of August, 1888, has passed, and said receiver is now charged with the collection of that amount, and the same is a lien and a cloud upon the said real estate of the complainant; and complainant further alleges that the defendants threaten to sell said real estate for the payment of said taxes.

The defendants answered.  They deny—

1. That the complainant is a scientific institution in the sense in which the word is used in the statute relating to exemptions, or in any sense whatever.

2. That the course of study and discipline is such as is usual in academies; that any instruction is given in English grammar or logic.

3. That said property is exempt from taxation under Act 301 of the Session Laws of 1887.

They neither admit nor deny that the institution has heretofore been exempted from taxation.

They admit that complainant has filed articles of association in the form prescribed by the act referred to in complainant's bill; that the complainant is the owner in fee of the real estate taxed; but deny that it is occupied for the purposes for which complainant was incorporated.

They admit its assessment, the rejection of the appeal and

confirmation of the assessment by the common council, and
that the real estate is taxed as averred in the bill, and for the
amount therein stated, and that they propose to collect it, if
possible.

They further aver that the—

"Complainant's institution is not in any sense a free
school or academy; that it was not established as a free
school or academy, or as a benevolent school or academy, nor
is it at present conducted or carried on as a benevolent school
or academy.

"That said school or academy was not established, nor is it
sustained, in whole or in part, by contributions or donations
or endowments; that it is a purely commercial enterprise,
conceived, established, and operated for pecuniary results
and gain solely."

That particular attention is given in said school to French,
German, music, drawing, painting, and dancing; that the
fees are large for board and tuition; that they cover, and are
intended to cover, the entire expense of the maintenance of
the school, and are fixed so as, in addition, to afford a profit
to the stockholders.

"That the persons establishing said school are its stock-
holders; that the articles of association filed by complainant
show but $5,000 worth of stock subscribed, and but one-half
of that sum paid in, while the cost of said building, and the
real estate upon which it stands, exceeded $34,000; that the
trustees of complainant bear the same relation to complain-
ant corporation that a board of directors of an ordinary
corporation bear to such corporation; that the act under
which complainant purports to be incorporated provides that
the persons who have subscribed the articles of association,
'with such other persons as may from time to time become
donors to such institution,' shall be a body corporate, etc.,
but the articles of association filed by complainant provide
that trustees to succeed those named in the articles 'shall
be chosen by the subscribers heretofore named, or by such
persons as may become owners of the stock thus subscribed,
and by such other persons as may become corporators, in
accordance with the by-laws hereafter to be adopted, either
by subscription to the stock of said institution, or by dona-
tions to the same, or otherwise.'"

They aver that—

"The institutions in this State mentioned in the bill of complainant as being exempted from taxation, such as Albion College and Kalamazoo College, are each and every of them institutions established and maintained by religious denominations, subscriptions, endowments, bequests, and contributions; that they have no stockholders or trustees who are personally interested, directly or indirectly, in the profits or revenues of the institution with which he or she is connected; that the fees charged by said institutions, and by each and every of them, are but nominal, and do not, and are not intended, to pay the expenses of instruction, even; that said institutions are, each and every of them, free institutions, and are practically benevolent institutions; that said institutions are the property of the denominations establishing them, and such denominations have the right to prevent their sale or diversion, but the stockholders of complainant are the only persons interested therein. The patrons have no interest, except that which grows out of contract relations, and the stockholders may sell, transfer, or divert any of the property owned by complainant; in other words, the stockholders are not managers merely, but are sole owners.

"These defendants submit that it is not the intention of the statute to exempt from taxation institutions which, although educational, are purely commercial in their purposes; that the complainant has no greater right to claim an exemption than a business college, or school of telegraphy, or school of stenography, which is established as a purely commercial enterprise.

"That complainant is not such an institution as is contemplated by provisions of the act under which it is claimed that complainant is incorporated, and the complainant does not come within the intent or purview of said act, and said complainant is not entitled to exercise corporate rights thereunder, or by virtue of the filing of the articles of association aforesaid."

It was stipulated in the court below that the cause might be heard on bill, answer, and replication, and the following statement of facts:

"1. The articles of incorporation annexed (to the bill of exceptions) are copies of the original, duly filed in the office of the Secretary of State.

"2. The complainant possesses certain property, which is

taxed as set forth in the bill, and built brick buildings on said land, at a cost of over $30,000, and uses said property for a seminary of learning.

"3. The said school is operated for two terms in each year, to wit, the September term, covering ——— weeks; and the February term, covering ——— weeks. That the fees for tuition are as follows:

"Tuition in the kindergarten department, $25 per term ; tuition in the primary department, $25 per term ; tuition in the preparatory department, $40 per term ; tuition in the collegiate department, $50 per term ; music, $50 per term.

"In the home department the fees for board and tuition are $250 per term.

" That the course of study in said school is as follows: In the primary and preparatory course, arithmetic, geography, language lessons, reading, spelling, penmanship, English composition, history of the United States.

"In the other courses, algebra, geometry, trigonometry, physiology, botany, physics, astronomy, chemistry, French, German, Latin, Greek, rhetoric, English literature, French, Roman, and Grecian history, music, dancing, drawing, painting, and special topics in American history.

"4. The amount of stock issued by said corporation is $34,500, which is held by seventeen stockholders, one of whom owns $200 worth, two of whom hold $500 worth each, one who owns $1,000 worth, one who holds $1,300 worth, four who own $1,500 worth each, three who hold $2,500 worth each, two who own $3,000 worth each, one who holds $4,000 worth, and one who owns $7,500 worth; that no other persons have taken stock or donated any moneys to said institution, or have any pecuniary interest in the same.

"5. That for the academic year 1886 and 1887 the receipts of complainant from fees aggregated the sum of $15,622.07, and the expenses of said year aggregate the sum of $14,223.09.

"6. That said school is not a free or benevolent school, but is sustained by tuition and board fees, and any excess over cost of maintenance is divided among the stockholders.

"7. That said corporation has a code of by-laws, which provide—

"a—When the annual meeting shall be held.

"b—For the election of a president, vice-president, treasurer, and secretary.

"*c*—That the above officers shall constitute the executive committee, who shall have the oversight of all the affairs of the corporation, call meetings, etc.

"That said corporation has no other by-laws."

Upon such hearing, the bill of complaint was dismissed, with costs.

The complainant appeals to this Court.

Subdivision 2, section 3, Act 301, Public Acts of 1887, provides that—

"The personal property of all posts of the Grand Army of the Republic, library, benevolent, charitable, and *scientific* institutions incorporated under the laws of this State, and such real estate as shall be occupied by them for the purposes for which they were incorporated," shall be exempt from taxation.

By an examination of this act, which is an amendment to section 3, Act No. 153, Laws of 1885, being the general tax law, it will be found that private educational institutions or schools, whether owned and managed by corporations or individuals, are not exempted from taxation by the laws of this State as such, and cannot claim exemption unless they can be properly classed as "library, benevolent, charitable, or scientific institutions." See Public Acts of 1887, pp. 414, 415; Public Acts of 1885, No. 153, pp. 175, 210.

The complainant cannot claim that it is either a library, benevolent, or charitable institution. There is no benevolence or charity about it, or in its method of doing business. It is simply an enterprise entered into for gain, as a private person would open a school for profit or a livelihood. That the persons engaged therein—the stockholders—may loss money in some years on their venture does not alter at all the *status* and character of the enterprise. They simply take the chances of profit and loss as other business men and corporations do.

If the complainant has any right to have its real estate, under the law, exempted from its share in the burdens of

taxation, it must be as a scientific institution, and on no other ground.

Outside of the fact that it purports to be incorporated, and has filed its articles of association, under chapter 138 of Howell's Statutes, which relates to the incorporation of educational institutions and associations, such as colleges, seminaries, academies, and other institutions of learning, it has no more claim to be classed as a scientific institution than has any private school established and taught for profit; and unless this incorporation, or pretended incorporation, makes it a scientific association in the sense of the exemption statute, it has no more claim or right to exemption from taxation than such private school.

The complainant comes into a court of equity, and asks relief upon the ground that it is so situated under the law that its property is exempt. The burden is upon it to show that it is a scientific institution in the eye of the statute exempting the real estate of such institutions, and it must also show that such real estate is occupied for the purposes of a scientific institution.

There is another chapter (How. Stat. chap. 144) which provides for the incorporation of associations for literary and scientific purposes; and the query at once arises, what is meant by the term " scientific institutions " as used in the exemption statute? Does it have reference solely to institutions incorporated under chapter 144 (How. Stat. pp. 1136–1138), or does it embrace the colleges, seminaries, and other institutions of learning organized and existing under chapter 138 (How. Stat. pp. 1126–1129)?

It is contended by the counsel for the complainant that this exemption of scientific institutions has existed in this State since 1827, while the associations (literary and scientific) authorized by chapter 144 were not provided for by any statute until 1865; that therefore the exemption could not have been intended to apply to them, but to incorporated institu-

tions of learning, which are in fact scientific institutions where the sciences are taught.

And it is also urged, in support of complainant's claim to exemption, that a similar exemption clause in Massachusetts has uniformly been construed by the courts of that state to include incorporated schools.

If it be granted that colleges and schools properly incorporated under chapter 138, and existing and operating under said chapter, are exempt from taxation as scientific institutions, still, in my opinion, the complainant, on its showing, is not entitled to such exemption. Under a like exemption clause in Massachusetts, and the one referred to by the counsel for the complainant, it was held by the supreme judicial court of that state that if the real estate sought to be exempted, in the shape of a farm, was carried on for profit, it would not come within the statute, and must bear its proper share of the burden of taxation, even if the profits of the farm went into the funds of the institution, which was conceded to be one having a benevolent as well as an educational object; it being designed and carried on for the benefit of poor students. *Trustees of Wesleyan Academy v. Wilbraham*, 99 Mass. 599.

In no case that I can find has an institution, confessedly run for gain and profit, even for educational purposes, been held exempt from taxation under statutes similar to ours, nor is it right that it should be.

"Taxation is an act of sovereignty, to be performed, so far as it conveniently can be, with justice and equity to all. Exemptions, no matter how meritorious, are of grace, and must be strictly construed." Cooley, Tax'n (1st. ed.) p. 146, note 1.

It will be noticed that the complainant, while pretending to organize and to become incorporated nnder chapter 138, does not, in its articles of association, comply with the terms of such chapter, and is not operating or using its property in

conformity therewith. The fact that it has filed its articles of association under this chapter does not preclude the city of Detroit, or the tax assessors, from questioning the good faith or the legality of such incorporation.

But, furthermore, in the present suit the complainant comes into a court of equity, and asserts that it is incorporated under such chapter 138, and that it is using its real estate for the purposes of such incorporation. This is denied by the answer, and therefore put in issue. Upon the affirmative of this issue depends the right of exemption which the complainant claims. It is said that no one but the people of the State, acting through the Attorney General by *quo war-ranto,* can question the legality of complainant's incorporation; that the tax gatherer must treat it as a corporation *de facto,* and assess it accordingly. There are two answers to this claim:

1. The assessor certainly has a right, even if the corporation was legally and properly incorporated under chapter 138, to inquire whether or not its real estate is being used for the purposes of its incorporation; and

2. When the complainant comes into court asserting its due and proper incorporation as the basis of its rights and relief asked, it must show such incorporation before it can demand such rights or relief, depending entirely upon such incorporation.

Corporations cannot exempt themselves or their property from taxation, or from any other liability, by organizing in form under a statute of incorporation which so exempts them, when it is evident, not only from the articles of association, but from the character of the business actually transacted, that the primary object of the organization and existence is the carrying on of a business wholly foreign to the statute under which they were incorporated. See *Mohr v. Minnesota Elevator Co.,* 41 N. W. Rep. 1074, and *State v. Minnesota Thresher Mfg. Co.,* Id. 1020.

The statute (chapter 138, How. Stat.) under which the

complainant is ostensibly incorporated evidently was intended for the incorporation of those institutions of learning established mainly by donations, legacies, and bequests, and not for the incorporation of business enterprises for gain. And it will be seen by the first section (4373) that it is not designed that the institution thus incorporated shall be a close corporation, whose stockholders shall be composed entirely of the original corporators, and such other persons as they may see fit to sell, give, or bequeath stock to; but it expressly provides that—

"The persons who have subscribed said articles, *with such other persons as may from time to time become donors to such institution*, or, if such articles of association so declare, the trustees elected as herein provided, shall be a body corporate," etc.

But the articles of association filed by complainant provide that the trustees to succeed the trustees incorporating the institution shall be chosen by the original subscribers to the stock—

"*Or by such persons* as *may become owners of the stock* thus *subscribed*, and by such other persons as may become corporators *in accordance with the by-laws hereafter to be adopted*, either by subscription to the stock of said institution, or by donations to the same, *or otherwise.*"

And no by-laws have been adopted specifying how persons can become corporators, though the incorporation was in 1882, and the stipulation of facts shows that there have been no donations, bequests, or legacies to the institution, but stock has been sold or taken, and the persons buying or taking the same are stockholders.

Section 4379, How. Stat. (section 7, chap. 138), provides that the trustees shall, under the provisions of that act, "apply all funds and property" belonging to the institution, "according to their best judgment, to the promotion of its objects and interests." The stipulation of facts shows that the complainant—

*" Is not a free or benevolent school,* but is sustained by tuition and board fees, and *any excess over cost of maintenance is divided among the stockholders."*

This of itself precludes donations, bequests, or legacies by charitable persons; and it is also stipulated that for the academic year 1886 and 1887 there was an excess, which was divided among the stockholders.

And it cannot be successfully maintained that the division of the profits of the institution among its stockholders is *"* applying the funds and property *"* belonging to the institution for the promotion of its objects and interests. A glance at the board and tuition fees will at once show that this school is not for the benefit of poor people; and it is difficult to perceive why a school that must be patronized by the rich, and that has not an element of charity or benevolence about it, but is simply nothing more nor less than a business enterprise for the purposes of gain and profit, should be exempted, with its real and personal property, from taxation, the burden its stockholders ought to bear being thrown upon the rest of the community, rich and poor alike; while the man or woman who opens a school that is accessible to the children of nearly all of the community, for the purposes of an honest livelihood, must pay his or her share of taxation upon everything used in keeping up and carrying on such private school.

Therefore, unless the complainant can clearly show, not only that it is organized, but also that it is operating, under chapter 138, there is no good reason why its property should be exempted from taxation.

Chapter 138 contemplates that the trustees shall be a body corporate, or the persons subscribing the articles in the first place,—

" With such other persons as may from time to time become *donors* to such institution."

This corporation, the complainant, is composed of the

stockholders, who became such in exactly the same way, and upon the same terms and conditions, as if the corporation had been organized for selling fish, or carrying on any other business for profit. A person becomes a stockholder by buying stock. There is no provision by which a *donor* can become a stockholder, and nowhere in the articles of association or by-laws is found anything which invites donations, or furnishes a motive for gifts or charity. Chapter 138 concludes with this section (section 4384, How. Stat. § 12):

"Nothing in this act shall be construed as granting banking powers, or as allowing the business of brokerage, *or any other powers not usually granted to, or exercised by, institutions for educational purposes.*"

It was not intended that schools should be organized and operated under this chapter for the purposes of making money to be divided among the stockholders of the corporation. There is another chapter for incorporations of this kind.

Exemption laws of this character, though beneficial in their objects, are in derogation of equal rights, and must be construed strictly. *Young Men's Society v. Mayor, etc., of Detroit,* 3 Mich. 182, citing *College v. State,* 19 Ohio, 110.

"By the terms of the law, all property *not expressly exempted therefrom* is subject to taxation. And any exemption claimed must come plainly within the meaning of the statute." See opinion of CAMPBELL, J., *Sisters of Charity v. City of Detroit,* 9 Mich. 100.

It was also said by the same Justice in that case that the occupation of the real estate to be exempted is not constructive, but actual, and must be by the institution, and for its corporate purposes, and those purposes must be those coming within the act under which it was incorporated.

It seems to me that the act under which this complainant claims to be incorporated expressly precludes the idea that the institutions organized under it shall be perpetually

controlled by their founders and their assigns, or that there shall be a return of revenue to the founders. But this institution, the complainant, is builded, by its articles of association and its by-laws, upon the idea that the original incorporators and their assigns shall forever dominate and control it, and that the capital invested in it shall pay dividends.

The decree of the court below, dismissing complainant's bill, is right, and ought to be affirmed.