No. 39.—Bishop & Parsons, plaintiffs in error, *vs.* The Mayor and City Council of Macon, defendants.

[1.] In case of actual necessity, to prevent the spreading of a fire or any other great public calamity, the private property of an individual may be lawfully taken, and used or destroyed for the relief or protection of the many, without subjecting those who act by order of the constituted authorities, to personal liability.

[2.] But where the private property of an individual—the whole or part of which might have been saved to the owner—is taken or destroyed for the benefit of the public, those for whose supposed benefit the sacrifice was made, ought in equity and justice, and we apprehend, are bound under the Constitution of the United States, to make good the loss which the individual has sustained for the common benefit of all.

[3.] Where the same extent of loss would have been sustained by the individual, as the necessary consequence of the fire or other public calamity, if his property had not thus been taken or destroyed for the protection of others, it would seem that in such case, the sufferer has no equitable claim to compensation.

[4.] In *personal torts*, such as libels, batteries, *crim. cons.* malicious prosecutions, and the like, the Court will rarely interfere and grant new trials,

either on account of the *excess* or *smallness* of the damages; it being within the peculiar province of *the Jury* in such cases to estimate the injury.

[5.] But even in *personal torts*, where the Jury have clearly abused their power, and evinced a total disregard of the proof, the Courts will interfere, and order a new trial.

[6.] But in cases where the Jury have a certain measure of damages to go by, no such latitude is allowed the Jury; and the Court will look into the circumstances, and grant or refuse a new trial, according to the justice of the case.

Motion for new trial. Bibb Superior Court. Heard before Judge FLOYD, January Term, 1849.

This was an action on the case, brought by the plaintiffs in error against the defendants in error, for the recovery of $1,378 14. The declaration sets forth, that on the 20th day of August, 1844, the plaintiffs were in possession of divers goods, wares and merchandize, tools and other implements used in the tinware manufacture, of the value of $1,378 14; that on the day and year aforesaid, a fire broke out in the city of Macon, in a tenement in the vicinity of the one occupied by the plaintiffs, but that plaintiffs would have succeeded in removing all their goods, wares and merchandize to a place of safety, had not the Mayor and Council of the city of Macon caused divers kegs of powder to be deposited in the cellar and under the tenement occupied by the plaintiffs, long before it become necessary so to do, for the purpose of blowing up the building, to arrest the fire; that in consequence of the depositing the powder as aforesaid, the agents, servants, hirelings, and all other persons assisting plaintiffs in the removal of their goods, wares and merchandize, &c. were hindered and prevented from saving the same; and that the same were wholly consumed and burnt during the progress of the fire.

The defendants filed the plea of the general issue.

The cause came on to be tried on the appeal, at May Term, 1847.

The Jury returned a verdict in favor of the plaintiffs' for five dollars and costs of suit.

Whereupon counsel for plaintiffs moved the Court for a new trial, on the grounds,

1st. Because the finding was contrary to the charge of the Court.

2nd.  Because it was contrary to law.

3d.  Because it was contrary to evidence.

The motion for a new trial was heard and overruled by Judge Floyd, at January Term, 1849, on the ground that this was not such a case of damages as would authorize the Court to grant a new trial.

To which decision of the Court counsel for plaintiffs excepted, and assigned error.

Hines and Gresham, for plaintiffs in error.

Poe, for defendants.

*By the Court.*—Lumpkin, J. delivering the opinion.

I shall not undertake to discuss the many grave questions which naturally arise upon this record.  I shall assume, however,

[1.] 1st. That it is now well settled, that in a case of actual necessity, to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity, the private property of an individual may be *lawfully* taken, and used or destroyed for the relief, protection or safety of the many.  And in all such cases—while the agents of the public who officiate are protected from individual liability, the sufferers are nevertheless entitled, under the Constitution, to just compensation from the public for the loss.  If the public necessity exists, and of this the constituted authorities are to judge, no trespass or wrong has been committed.  17 *Wend.* 285.  18 *Ib.* 126.

[2.] 2dly. It is equally evident on the other hand, that if the private property of an individual, the whole or a part of which might otherwise have been saved to the owner, is taken or destroyed for the benefit of the public, or of the inhabitants of a particular county, city, town, or other smaller section of the community, those for whose supposed benefit the sacrifice was made, ought, in equity and justice, to make good the loss which the individual has sustained for the common advantage of all.  And there is an implied assumpsit or undertaking on the part of the public, that adequate remuneration shall be made.  *Ib.*

[3.] 3dly. Where the same extent of loss or injury would have been sustained by the individual, as the necessary consequence of

Bishop & Parsons *vs.* Mayor, &c. of Macon.

the fire or other public calamity, if his property had not been thus taken or destroyed for the protection of others, he would hardly seem entitled to compensation. For in such case, although others have been benefited, he has in fact sustained no damage. *Ib.*

But passing by these questions, I shall confine myself strictly, and within the narrowest limits, to the single point in the case.

It seems that, during the fire which occurred in the city of Macon, *on the night of* the 20th of August, 1844, the plaintiffs were engaged, with their servants and friends, in removing the goods from the tenement which they occupied. While thus employed, and the fire having communicated to the building in the immediate neighborhood, several kegs of powder were placed, by order of the City authorities, in their cellar, and trains laid to explode them. This fact being made known, all the persons who had been previously engaged in removing plaintiffs' goods, instantly desisted, and retired from the premises. Sometime elapsed before the fire reached the adjoining edifice; and it was from 30 to 60 minutes before the tenement was blown up. The plaintiffs had some fourteen or fifteen hundred dollars worth of merchandize in the store at the time, and brought their action to recover its value—a bill of particulars being annexed to their writ—upon the ground, that but for this premature movement on the part of the Mayor and Council, they could have saved all their property. The proof sustained the declaration in every particular; but the Jury returned a verdict of five dollars only. A new trial was asked, on the ground that the finding was contrary to evidence, and refused for the reason " that this was not such a case of damages as would authorize the Court to disturb the verdict."

Was the presiding Judge right in this opinion?

[4.] It is certainly true that, in personal torts and actions, sounding purely in damages, the Courts will usually refuse new trials for *smallness* of damages, it being the strict and peculiar province of the Jury in such cases to estimate the injury. To entitle the applicant to succeed in this class of cases, the Jury must clearly have manifested an abuse of their power.

[5.] But even in personal torts, where the finding is grossly inadequate, and the compensation given entirely disproportioned to the injury proven to have been sustained, the Court will interfere and grant relief.

The reason why the Court will not disturb the verdict of the Jury in batteries, libels, *crim. cons.* malicious prosecutions, and the like, is, that there is in fact no criterion of damages to regulate the verdict.

[6.] But where a reasonably certain measure of damages is afforded, no such latitude is allowed the Jury; and the Court will look into the circumstances, and grant or refuse a new trial, or correct the verdict according to the justice of the case.

Now, this was an action on the case, in the nature of an *indebitatus assumpsit*, for the value of the property of the plaintiffs, destroyed by order of the City authorities. Here was an exact measure of damages for the Jury to go by. The proof, as it appears in the bill of exceptions, as to the goods consumed and their value, was full and explicit, and uncontradicted. And yet the verdict, instead of being for $1,378.14, was for $5. It was manifestly, therefore, against evidence, and should have been set aside by the Court. From mistake, or some other cause, they found a much less amount than in justice they ought. The plaintiffs were entitled to a re-examination of the matter.

A new trial is consequently awarded.