ANDREW AITKEN *vs*. THE VILLAGE OF WELLS RIVER.

January Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, START and THOMPSON, JJ.

*Property Destroyed by Municipality to Avert Public Injury—Eminent Domain—Respondeat Superior—Damnum Absque Injuria.*

The trustees of the defendant village destroyed the plaintiff's mill and dam during a freshet to prevent the river from washing out the highway. *Held*, that the defendant was not liable.

It was not a taking of the plaintiff's property under the power of eminent domain, for which the Constitution requires compensation to be made, but a destruction of it under the police power of the State, to avert imminent public injury.

If, as the plaintiff contends, there was a public necessity for the destruction, the plaintiff's loss is a damage without legal injury.

If, as the plaintiff contends, the defendant's by-law touching the removal of nuisances and repair of highways authorized the trustees to destroy the property, still the act was public and governmental in its nature, and could not subject the defendant to liability in the absence of a statute imposing it.

TRESPASS QUARE CLAUSUM.   Heard on an agreed statement at the December Term, 1897, Orange County, *Ross*, C. J., presiding.   Judgment, *pro forma*, that the defendant recover its costs.   The plaintiff excepted.

*J. H. Watson* for the plaintiff.

*Smith & Sloane* for the defendant.

ROWELL, J.   The defendant is an incorporated village, and constitutes a highway district of the town.   All the highway taxes assessed by the selectmen on the polls and ratable estate of the village are collected like other village taxes, and two-thirds thereof paid to the village treasurer, and the trustees of the village are to expend the same in building and maintaining highways and bridges, and they are authorized to lay out, alter, maintain and discontinue

highways, and to appraise and settle the damages therefor; and the village can lay a tax for any of those purposes.

The by-laws of the village authorize the trustees to draw orders on the village treasurer for the payment of any sums assessed as damages for land or other property taken or improved for a highway or other public use, and provide that the trustees may remove nuisances and direct the cleaning, repairing and improvement of streets, commons, lanes, walks and bridges. The charter authorizes the village to make by-laws for protecting its highways from injury, but it does not appear that any have been made.

Before and at the time in question, the plaintiff owned a mill in said village, and a dam across Wells river, and on the mill side of the river was a highway, also in the village. At said time, because of rains or otherwise, the water of the river was very high, and carried away part of plaintiff's dam, and cut a channel around the mill and between it and the highway, which it was badly washing out, and to change the current away from the highway, to prevent further damage to it and to other property, the trustees burned the mill and its contents and blew up and destroyed the dam; and the question is whether the village is liable for their action.

The plaintiff contends that this was a taking of his property for public use by an exercise of the right of eminent domain; that the trustees had a right, in the circumstances to take it as they did, and therein were acting within the scope of their authority; that therefore he is entitled under the Constitution to compensation from the village; and as the taking was without compensation, that the village is liable in this action.

But this proposition cannot be maintained, for this was not a taking of the plaintiff's property for a public use in the sense contended for, but a destruction of it to avert an imminent public injury, which is a different thing from taking by the right of eminent domain, and is in no legal

sense an exercise of that right, but stands on entirely different ground, namely, on the ground of necessity, or, more properly speaking, on the ground of the police power of the State, whereas the right of eminent domain stands on constitutional grounds.

In *Field* v. *The City of Des Moines*, 39 Iowa, 575: 18 Am. Rep. 46, 56, it is said that the great weight of judicial authority holds that the destruction of property under authority conferred by law upon officers of municipal corporations is not an exercise of the right of eminent domain, but a regulation of the right that individuals have to destroy private property in cases of inevitable necessity, to prevent the spreading of fire or other great calamity.

In *Keller* v. *The City of Corpus Christi*, 50 Texas, 614: 32 Am. Rep. 613, the distinction between an exercise of the right of eminent domain and a police regulation to meet an impending peril by the destruction of property is sharply drawn. It is said that one can wait the forms and delay of the law, but that the other is governed by necessity, which knows no law; and reference is made to the unwise delay of the Lord Mayor of London to destroy some wooden buildings, which caused half that city to be burned in the great conflagration of 1666.

In *Russell* v. *The Mayor, &c., of New York*, 2 Denio, 461, a case that grew out of the great fire of 1835, it is said that authority conferred by statute upon the mayor to order the destruction of buildings to prevent the spreading of a fire is not a grant of a right of eminent domain, and therefore not within the constitutional provision requiring compensation for property taken for public use, but that it is a regulation of the right that individuals possess to destroy private property to avert a public calamity. But in *Hale* v. *Lawrence*, 1 Zab. 714: 47 Am. Dec. 190, a case growing out of the same fire, the Court of Errors and Appeals of New Jersey held that said statute granted power not before existing, and that therefore it was the grant of a

right of eminent domain. That case was again before the court, with *The American Print Works* against the same defendant, in 3 Zab. 590: 57 Am. Dec. 420, 431, when the distinction above stated was clearly made. . The distinction is well stated by Senator Verplanck in *Stone* v. *The Mayor and Aldermen of New York*, 25 Wend. 157, 173, which also grew out of that fire. See, also, Randolph on Eminent Domain, §§ 8, 9; 1 Dillon on Municipal Corporations, (4th ed.) § 141.

The plaintiff cites *Bishop* v. *The Mayor of Macon*, 7 Ga. 200: 50 Am. Dec. 400, in which it was held that the owners of property destroyed to stay a conflagration were entitled under the constitution to compensation, and that the city was liable on the ground of an implied assumpsit, for which proposition *The Mayor of New York* v. *Lord*, 17 Wend. 285, and 18 Wend. 126, is referred to as authority. But in that case liability was imposed by statute, without which it was expressly said that no liability would exist. It is said in *Field* v. *The City of Des Moines*, above cited, that *Bishop* v. *The City of Macon* stands alone, and that, in the language of the supreme court of California in *Dunbar* v. *The Alcalde etc. of San Francisco*, 1 Cal. 358, without some charter or other statutory enactment imposing liability, the decision cannot be sustained.

It is decisive of this question that if the act complained of can be justified on the ground of public necessity, as it must be if justified at all, the plaintiff's loss is a damage without legal injury.

The plaintiff further contends that the by-law that authorizes the trustees to remove nuisances and to direct the cleaning, repairing and improvement of streets, commons, lanes, walks and bridges, makes them the servants and agents of the village, and that thereby the village undertakes to perform those duties by its servants and agents, whom it may control, and not because the duty is imposed upon it by law, and that therefore the village is

liable on the principle of *respondeat superior*. But this contention cannot be maintained.

There is no statute, nor provision in its charter, nor by-law, that makes the village liable; and assuming without deciding that the by-law referred to authorized the act complained of, and that the village had power to authorize it, yet the by-law did not make the trustees the servants and agents of the village so that the principle of *respondeat superior* applies.

The city council of Charleston, South Carolina, acting under the general municipal powers of the city, without any statute creating liability, adopted an ordinance authorizing the intendant, among other officers, in time of fire to demolish such buildings as might be judged necessary by him to prevent the further spread of a fire, thereby investing that officer with power to judge whether the necessity existed. A fire being in progress, the plaintiff's house was blown up by order of the intendant, and the fire was subsequently extinguished before it reached his premises. He brought an action of trespass against the city, claiming that the property was destroyed without necessity, and that the ordinance authorizing the intendant to destroy the property for the benefit of the city was sufficient to charge the city in case he proved that the destruction was unnecessary and that the intendant had abused his discretion. But the court gave judgment against the plaintiff on the ground that the city, being a municipal corporation, was not liable to an action unless given by statute. *White* v. *Charleston Council*, 2 Hill (S. C.) 571. Judge Dillon says the result of this case was right, but that, assuming the power to pass the ordinance, the decision should have been put upon the ground that the intendant was discharging a public, as distinguished from a municipal, or corporate, duty, and was not in that matter to be regarded as the agent of the city, and that therefore the city was not, on the principle of *respondeat superior*, responsible

for his acts. 2 Dillon on Municipal Corporations, (4th ed.) § 975, note·1.

In *McDonald* v. *The City of Red Wing*, 13 Minn. 38, it was held that a city is not liable for the destruction of a building torn down to arrest the progress of a fire, unless such liability is created by statute, and that it makes no difference whether the building is torn down by direction of the city officers assuming to act in their official capacity, or by citizens and bystanders on their own motion.

*Field* v. *The City of Des Moines*, above cited, was an action to recover the value of buildings destroyed by order of the mayor to prevent the spread of a fire. It was contended that as the city, by its ordinance, had authorized the mayor to judge of the emergency and to direct the destruction of the buildings, it, thereby made his acts the acts of the city. The court said it would not stop to inquire whether the statute authorized the city to pass the ordinance under which the mayor acted, for if it did, and the ordinance was valid, and authorized the mayor to judge of the emergency, yet the city was not liable for his acts, in the absence of a statute creating such liability. There are numerous other cases to the same effect, but it is not necessary to refer to them.

The case at bar falls clearly within that class of cases in which the municipality is exempt from liability in the absence of a statute imposing it, on the ground that the act complained of is not its act, but the act of persons who are deemed to be public officers, and who, though appointed and paid by the municipality, and though its agents, perhaps, for other purposes, yet are held not to sustain that relation to it in respect of the particular act in question. This is upon the ground that the municipality acts in the matter in a governmental capacity, and, as it were, for and on behalf of the State, and therefore, in the absence of a statute making it otherwise, enjoys the same immunity from liability for the acts of its officers that the State itself

would enjoy had it done the same thing by its own officers. *Freel* v. *School City of Crawfordsville*, 142 Ind. 27 : 37 L. R. A. 301.    This doctrine is held and applied in *Welsh.* v. *The Village of Rutland*, 56 Vt. 228, and *Weller* v. *The City of Burlington*, 60 Vt. 28.    Nor is *Whipple* v. *The Village of Fair Haven*, 63 Vt. 221, in conflict with it.    That case was not put on the ground of *respondeat superior*, but on the ground that the village  owed the orators, not a general duty as a part of the public, but a special duty as individuals, not to discharge water upon their land, and that the injury complained of was imputable to a neglect of that duty by the village itself, and not to the wrongful act of its trustees, and that the orators' land could not thus be subjected to servitude for the benefit of the public.

*Judgment affirmed.*